[Civil No. 2480.   Filed December 6, 1926.]

[251 Pac. 173.]

F. A. HATHAWAY, Appellant, v. I. L. NEAL, Surviving Partner of the Firm of NEAL BROTHERS, I. L. NEAL, and SARAH NEAL, Individually and as Administratrix of the Estate of W. A. NEAL, Jr., Deceased, Appellees.

Messrs. Favour & Baker, for Appellant.

Mr. C. W. Herndon, for Appellees.

LOCKWOOD, J. — F. A. Hathaway, hereinafter called appellant, brought suit against I. L. Neal as surviving partner of the firm of Neal Brothers, and in his individual capacity, and Sarah Neal, individually, and as administratrix of the estate of W. A. Neal, Jr., deceased, hereinafter called appellees, to foreclose a mortgage on certain livestock in Mohave county. The case was tried before the court without a jury, and judgment rendered for the foreclosure of the mortgage and for the application of the proceeds thereof in a certain manner. An appeal was taken to this court from that portion of the judgment which directs that upon sale of the property foreclosed defendants shall receive from the proceeds, before payment of any part of the principal and interest due plaintiff, the sum of sixteen hundred dollars per annum from August 15, 1923, to May 15, 1925.

The findings of fact made by the trial court are not objected to by either party, and we summarize them as follows: It appears therefrom that on March 9, 1921, Charles P. Mullen and Guy B. Shultz, being indebted to A. John Mullen in the sum of some $32,000, to secure the payment thereof, gave him a chattel mortgage on certain cattle, numbering at that time about two thousand head, and running in Mohave county, together with various range rights and improvements. On the 26th of August of the same year appellee I. L. Neal and W. A. Neal, Jr., his brother, purchased the mortgaged property from

Mullen and Shultz, and as part of the purchase conditions gave the latter a chattel morgage covering, among other things, the same livestock as were included in the mortgage first referred to. In this second mortgage were, among others the following provisions:

"(4) The mortgagors do hereby by these presents constitute and appoint the mortgagees their lawful attorneys in fact for them and in their place and stead to gather, ship, sell, and dispose of any or all of certain livestock, cattle, horses, mules, and burros when it, in the sole discretion of the mortgagees, may be advisable, applying the net proceeds of such sale in the manner following. . . . From the proceeds of the sale of the bar S cattle and the L H G cattle there shall be allowed to the mortgagors an annual amount up to sixteen hundred dollars ($1,600.00) representing the actual cost of running the outfits."

About the 30th of August, 1922, A. John Mullen sold the first mortgage to A. H. Favour, and he, about November 24, 1924, sold it to appellant. W. A. Neal, Jr., died some time after the giving of the second mortgage, and Sarah Neal, his wife, was appointed administratrix of his estate. The Neals managed the cattle aforesaid from the time of their purchase, but sold none of the mortgaged cattle and received no money from their operation after August 15, 1923. A small sum was paid on the first mortgage, but the greater amount due thereunder went to default and this suit was instituted to foreclose it.

This represents substantially all the findings of fact made by the trial court. As conclusions of law therefrom, the court, after decreeing the foreclosure of the first mortgage, ordered the proceeds to be applied first, to the payment of the costs and the attorney's fees; second, to the payment of sixteen hundred dollars per annum from August 15, 1923, to May 15 1925, to the appellees as provided in the *second* mort-

gage; and the balance on the principal and interest due appellants under the judgment of foreclosure.

It is difficult for us to see, if these were all the facts before the trial court, on what theory the portion of the judgment appealed from can be sustained. There is no finding there was any provision whatever in the first mortgage that any sum should be allowed appellees or any other person for running the mortgaged cattle; on the contrary, it shows on its face the mortgagors were to bear all such expenses. The appellant, Hathaway, was in no manner a party to the second mortgage; nor does it appear that he ever agreed to carry out the provisions thereof. We certainly know of no rule of law to the effect that, when the holder of a first mortgage forecloses it, there shall be paid from out the proceeds of such foreclosure, to any person whatever, any sum under or by the provisions of a second mortgage which neither the first mortgagee nor his successors in interest were parties to, and which they have assumed no personal liability to execute. The findings of fact utterly fail to support the conclusion of law, and the portion of the judgment appealed from.

It is urged, however, by counsel for appellee in his brief that the reporter's transcript of the evidence on file shows affirmatively that at the time of the trial both the first mortgage actually declared on and foreclosed, and the second mortgage containing the provisions under which the court allowed the sixteen hundred dollars per annum, were owned by the same party. Even so, no rule of law has been expressly presented which would authorize such a judgment. The only suggestion of one we can discover is in that portion of appellee's brief reading as follows:

"It seems to us that the answer to this last question which has been submitted by appellees decides

the whole question in this case, in other words, who owns the mortgage, and that was fully answered by the president of the bank of Arizona on the witness-stand when he stated that the mortgage was owned by the bank of Arizona, and this mortgage, allowing appellees a certain amount a year for the care of the cattle mentioned in said mortgage, was considered by the superior court and allowed, and we consider that the appeal brought in this case is frivolous. We do not believe that it is necessary to submit further or any authority in support of our position in this case, as to the decision rendered by the superior court of Mohave county as to the amount to which appellees were and are entitled. It seems to us a plain question of fact and right, and we most respectfully submit the case to this honorable court with full confidence of our position.''

Counsel does not above state any definite legal proposition upon which he relies, and the only one which we can even infer he refers to is that, because the bank of Arizona was, at the time of the trial, the owner of both the first and second mortgage, the two had merged, so that in a suit to foreclose the first the bank was bound by the provisions of the second. It is, of course, the general rule of law that, where the holder of a mortgage acquires the equity of redemption in mortgaged premises, a merger of the two estates results, vesting the mortgagee with the complete title and putting an end to his rights or title under the mortgage. 41 C. J. 775. This, however, is not true when a merger would work injury or violate well-established principles of equity, or be contrary to the intentions of the parties, and primarily of the mortgagee, who purchases the equity of redemption, and the presumption is, in the absence of proof to the contrary, that the mortgagee intended what would best accord with his interests. 41 C. J. 779. There is a grave question whether the doctrine of merger applies at all to a case like this, when the

holder of one encumbrance on the premises purchases another outstanding encumbrance, with the legal title still in a third party. But, even if it does, the limitations above stated should be more stringently applied than in the ordinary case where the legal and equitable title had passed into the same hands.

Applying this rule to the instant action, it was clearly not to the interest of the holder of the first mortgage that from the proceeds of his foreclosure there should be taken some three thousand dollars under the provisions of the second mortgage to be paid to the mortgagor before anything could be applied on the principal and interest of the debt sued on, especially when, as in this case, it appears the property in question sold for far less than the amount of the first mortgage. We are decidedly of the opinion there is nothing in the record which could support a holding that there was a merger of the first and second mortgages, but rather to the contrary. Such being the case, we cannot see upon what theory the trial court ingrafted a clause of the second mortgage on the first.

The judgment is modified by setting aside the portion appealed from, but in all other respects is affirmed.

McALISTER, C. J., and ROSS, J., concur.