## TOSTON v. UTAH MORTGAGE LOAN CORPORATION.

### No. 9450.

Circuit Court of Appeals, Ninth Circuit.
Nov. 25, 1940.

F. M. Bistline, of Pocatello, Idaho, for appellant.

A. L. Merrill and R. D. Merrill, both of Pocatello, Idaho, and C. W. Dunn, of Logan, Utah, for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The second amended complaint filed by plaintiff-appellant in the court below alleged that, prior to June 14, 1934, he was the owner of certain described real property and on said date executed a promissory note in the sum of $2,800 in favor of the defendant-appellee with interest at 6% per annum; that on the same day, as a part of the same transaction, plaintiff made a mortgage of the real property above referred to in favor of the payee of the promissory note as security therefor, which mortgage was delivered to defendant and afterwards recorded. This complaint further alleged that on said June

14, 1934, the plaintiff made a promissory note to the same payee in the sum of $196, with interest at 7%, secured by a "second" mortgage on the same property, which recited that it was subject to the prior mortgage of the same date; that thereafter, when plaintiff was in default on the note for $196, the defendant procured a judgment of foreclosure of said second mortgage; that the premises were sold to defendant for the sum of $407.15; that the sale was made subject to the senior mortgage (first above referred to) and the certificate of sale so recited. It appears in the complaint that the foreclosure action was instituted July 10, 1936, judgment of foreclosure was entered December 22, 1936, and the sale thereunder to defendant was made on January 16, 1937. Following the allegations set forth above, the complaint went on to allege that by reason of said foreclosure and sale the defendant acquired all the right, title, and interest of plaintiff in and to said property (subject only to mortgagor's right of redemption) and because defendant was the owner of the first mortgage, there was a merger of title and thereby the first mortgage was discharged; that on May 2, 1937, defendant entered into an agreement with plaintiff whereby defendant "agreed to dispose of the foreclosure proceedings" of the second mortgage; that the amount of the sale price, $407.15, should be considered the amount of the mortgage debt to become payable December 31, 1938, with interest at 6% from the date of the foreclosure sale; that the first mortgage which (it was alleged) had been discharged by the foreclosure of the second, be reinstated; that the plaintiff provide additional security therefor by executing and delivering to defendant a crop and chattel mortgage covering crops grown on said premises during the years 1937 and 1938; that plaintiff made all payments required by defendant under said agreement; that prior to completing these payments, plaintiff received from defendant a written promise that when payments were so made, "the foreclosure proceedings would be disposed of"; that the agreement was oral, but fully executed and by reason thereof the defendant regarded the foreclosure proceedings as cancelled. Further, it is alleged that the defendant "did not dispose of said foreclosure proceedings," but, on the contrary, proceeded therewith, and on June 5, 1938, assigned and transferred its certificate of sale to a third person who thereafter procured a sheriff's deed for said land; that plaintiff thereby lost all right, title, and interest in said real estate; that the premises were of the value of $8,000; that after deducting the encumbrances and interest thereon, plaintiff suffered damages in the sum of $4,878.42, for which he prayed damages.

The chattel or crop mortgage was attached to and made part of the complaint as exhibit "A," and by its terms related only to the first mortgage for $2,800, to secure unpaid interest. A letter from the defendant to plaintiff, dated August 11, 1937, relating to receipt by defendant of certain moneys under the crop mortgage was referred to in the body of the complaint as "the written promise from the defendant" to dispose of the foreclosure proceedings, and set forth in full as exhibit "B." This letter states that defendant has the assurance of plaintiff that certain moneys to be received from the sale of wheat and hay "so far as it is necessary will be used to pay in full the amount covered by our crop mortgage, which, when settled, will dispose of the foreclosure now pending on your mortgage."

The defendant filed a motion to strike paragraph VI of the second amended complaint, which alleged merger, and the allegations in paragraph VII thereof, which alleged discharge of the senior mortgage as a result of the foreclosure sale and that the senior mortgage had been reinstated by the crop mortgage. The motion urged that the objectionable allegations were merely legal conclusions and were immaterial, sham, and irrelevant. Defendant demurred generally on the ground that the complaint failed to state a cause of action, and specially on the ground that the alleged agreement was oral and in violation of the laws of Idaho requiring mortgages and transfers of real property to be in writing, that such alleged agreement could not be the basis of an action, that the allegations in the complaint as to the contents of said exhibit "A" were in conflict with recitations in said exhibit, and similarly the allegations with reference to exhibit "B" were contrary to the recitations in said exhibit.

October 16, 1939, the District Court granted the motion to strike the alleged conclusions of law from the complaint, sustained the general demurrer, and entered

a judgment of dismissal containing the following recitals: "It appearing to the Court that the plaintiff has heretofore been granted leave to amend his complaint on two different occasions and has filed herein three complaints to which the defendant has pleaded in each instance and which said pleadings have been sustained, it is further ordered that leave to further amend be not granted, but that said action be and the same is hereby dismissed with costs to the defendant * * *."

The plaintiff appeals from this order.

Primarily, the appellant contends that the appellee, holding both the first and second mortgages on the same piece of property, purchased the property by virtue of the foreclosure of the junior encumbrance and by so doing extinguished the debts of both mortgages. "In other words," says the appellant, "the land being the primary fund and the appellee having acquired the land, appellant owed appellee nothing in the absence of a showing of a deficiency." After setting up the foregoing as a major premise the appellant advances the proposition that the appellee agreed to "dispose" of the foreclosure proceedings of the second mortgage, even though it had gone to sale, in consideration of appellant making payments on the first mortgage during the period of redemption and that acceptance of these payments operated as a waiver of its rights under the certificate of sale and placed appellant again in the position of mortgagor. It would follow, therefore, if we interpret appellant's contentions and argument correctly, that the appellee having elected to collect on the first mortgage must be deemed to have surrendered its rights as owner under the certificate of sale, and not being in a position to release the mortgage by reason of having sold the land, it is responsible in damages.

If the allegations of the plaintiff to the effect that the purchase of the mortgaged property by the Utah Corporation at the foreclosure sale under the junior mortgage constituted or effected a merger; that the taking of the crop mortgage was in pursuance of an agreement to "dispose" of the second mortgage; that the first mortgage was discharged by the purchase of the property by the Utah Company at the foreclosure sale and then reinstated by an oral agreement, were allegations of ultimate facts and not conclusions of law, the court below erred in granting the motion to strike and sustaining the general demurrer.

Was there a merger? It is a general rule of law that "Whenever a greater and a less estate coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated; or in the law phrase it is merged, that is, sunk or drowned in the greater." 21 C.J. § 233, p. 1033. It would follow, therefore, that a merger or extinguishment may take place when the fee to real property and the ownership of an encumbrance come into the hands of one person at the same time. But however rigid and inflexible may have been the rule at common law, intention seems to be the governing factor in equity. So, a merger will not be declared in such a case as this, if contrary to the intention of the mortgagee or against his best interests. Westheimer et al. v. Thompson et al., 3 Idaho 560, 32 P. 205, 207; Guaranty Trust Co. of New York v. Minneapolis & St. L. R. Co., D.C.Minn., 33 F.2d 512, 530; Citizens' State Bank of Ralston v. Petersen et al., 114 Neb. 809, 210 N.W. 278; Lashley v. Dexter, 133 Okl. 297, 272 P. 427, 429; Perry v. Perry et al., 53 S.D. 585, 221 N.W. 674, 675; Rasmussen v. Stanfield et al., 49 S.D. 120, 206 N.W. 475, 476; Purdom v. Broach, 210 Ky. 161, 275 S.W. 365, 366; 19 R.C.L. § 276, p. 484; 41 C.J. § 872, p. 776. In Hospes v. Almstedt et al., 83 Mo. 473, 474, 475, the Supreme Court of the State of Missouri said "that the lien of a mortgage is not merged in the title acquired by the mortgagee, at a sale of the mortgaged premises under a junior mortgage, or judgment, when it is his intention that there shall be no merger; and in the absence of evidence to the contrary, his intention will be presumed to accord with his interests." And the Supreme Court of Washington, in Van Woerden v. Union Imp. Co., 156 Wash. 555, 287 P. 870, 872, held that, "as between the parties to the transaction the taking of the title will not be permitted to operate to the detriment of the principal debtor."

Under the authorities cited, an allegation of merger as here made is objectionable, for under the facts pleaded merger or extinguishment seems contrary to the intentions of the mortgagee. The Utah Corporation took a crop mortgage from the foreclosed mortgagor, who had remained in possession during his redemption period, for the unpaid accrued interest under the senior mortgage. It must be understood from this that it was the intention of the parties to keep the senior mortgage alive so as to permit, if within the power of

the mortgagor, redemption to be made of the foreclosed second mortgage and thereafter release through payment of the senior mortgage. As a general rule the foreclosed mortgagor is permitted to remain in possession of the foreclosed premises during the period of redemption in the status of a tenant; if he was able to keep up payments on the senior mortgage and lawfully redeem under the second, he might save his property. Such result would be to the benefit of both appellant and appellee, and in conformity with the nature of the latter's business.

Moreover, the allegation of an oral agreement to reinstate the foreclosed junior mortgage as a first mortgage on the property was purely a conclusion of the pleader, for such an agreement is not sanctioned by the law of Idaho. The Idaho Code 1932, § 44-802, expressly provides, "A mortgage can be created, renewed or extended only by writing, executed with the formalities required in the case of a grant or conveyance of real property."

Again, as indicative that no such agreement existed as asserted by plaintiff, we have the language of a letter from the appellee to appellant which was made part of the complaint as exhibit "B." This letter, which referred to the disposition of certain money received for sale of grain covered by the crop mortgage, reads, in a single sentence important here, as follows: " * * * In other words, we have turned over to you one-half of the amount so far received on the advance against the contract of purchase of 1,000 bushels of wheat from you by Sterling H. Nelson Company, and Mr. Smith advises us that he has turned these checks over to you with your assurance that the full proceeds of this wheat, under this sales contract, together with the proceeds of the hay, so far as it is necessary will be used to pay in full the amount covered by our crop mortgage, which when settled, will dispose of the foreclosure now pending on your mortgage." The crop mortgage referred to was given to secure unpaid interest on the mortgage for $2,800—the first mortgage—and the "foreclosure now pending" could not have referred to the second mortgage for that reason and, as well, because the junior mortgage had already been foreclosed and the property sold.

Affirmed.