804 P.2d 1310

**MID KANSAS FEDERAL SAVINGS AND LOAN ASSOCIATION OF WICHITA, a corporation organized and existing under the laws of the United States of America, Plaintiff–Appellee,**

v.

**DYNAMIC DEVELOPMENT CORPORATION, an Arizona corporation, Defendant–Appellant.**

No. CV–89–0447–PR.

Supreme Court of Arizona, En Banc.

Jan. 10, 1991.

**124**

Apker, Apker, Haggard & Kurtz by David B. Apker, Phoenix, for plaintiff-appellee.

Law Offices of Mitchell C. Laird, P.C. by Mitchell C. Laird, Jerry Steele, Phoenix, for defendant-appellant.

Gust, Rosenfeld & Henderson by Brent F. Moody, Margaret L. Steiner, Robert L. Stewart, Jr., Phoenix, for amici curiae, Arizona Bankers' Ass'n, Valley Nat. Bank, First Interstate Bank, Sec. Pacific Bank.

Feller & Cohen by Roger L. Cohen, Kathi M. Sandweiss, Phoenix, for amicus curiae Southwest Sav. & Loan Ass'n.

## OPINION

FELDMAN, Vice Chief Justice.

A construction lender held notes secured by first and second deeds of trust on a residential developer's property. The lender acquired title to the property at a trustee's sale on the second trust deed and thereafter brought an action against the developer for the balance due on the first notes. The court of appeals held that the lender was precluded from doing so under A.R.S. § 33–814(G)[1] and the rationale of our decision in *Baker v. Gardner*, 160 Ariz. 98, 770 P.2d 766 (1989).

We must determine whether the anti-deficiency statutes apply to a residential developer and whether a lender may recover the balance owing on the first notes after it has acquired title to the property at the foreclosure sale of its second deed of trust. Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

### A. Factual Background

Dynamic Development Corporation (Dynamic) is a developer that builds and sells residential and commercial property. In May 1985, Dynamic secured financing from Mid Kansas Federal Savings and Loan Association (Mid Kansas) for the construction of ten "spec" homes on lots Dynamic owned in a Prescott subdivision. The total loan, amounting to $803,250, was disbursed in the form of ten separate loans, each evidenced by a separate note and secured by a separate deed of trust on a single unimproved lot. Unable to complete construction with the amounts financed under the first notes, Dynamic obtained an additional $150,000 loan from Mid Kansas in January of 1986. This loan was evidenced by a single promissory note and a blanket deed of trust on the seven lots remaining unsold.

The first and second notes came due in the summer of 1986. Two more lots were sold and released from the liens. In the fall of 1986, Mid Kansas notified Dynamic that the five remaining properties would be sold at a trustee's sale if the total debt on the first and second notes was not paid. Dynamic was unable to pay the total balance due, but did sell one more lot prior to the trustee's sale and applied the proceeds to the second note.

Mid Kansas noticed a trustee's sale on the four remaining properties, each of which was by then improved by a substantially finished residence. At the time of the trustee's sale, Dynamic owed Mid Kansas approximately $102,000 on the second

---

1. Then codified as § 33–814(E).

note and $425,000 on the four first notes. Originally, the sales on the first deeds were scheduled for the day after the sale on the second deed. On January 20, 1987, the second-position blanket deed of trust was foreclosed by the sale of the four parcels. Mid Kansas purchased the property with a credit bid of the balance owed on the second note. The four first-position sales were postponed and ultimately never held. Having thus acquired title to the property, Mid Kansas now seeks to waive the security of the first liens and sue for the balance due on the first notes.

### B. Procedural Background

Mid Kansas's amended complaint stated causes of action for recovery of the balance due under each of the four promissory notes. Mid Kansas moved for partial summary judgment on the four debt claims. The trial court granted the motion and entered judgment for Mid Kansas pursuant to Rule 54(b), Ariz.R.Civ.P., 16 A.R.S.

The court found that Dynamic was in default on the four construction notes in the principal amount of $425,250 plus interest at thirteen percent. The court rejected Dynamic's claim that Mid Kansas had "artificially created a deficiency and now seeks a deficiency judgment against the maker of the notes." The court determined that

> under the holding of *Southwest Savings and Loan v. Ludi,* 122 Ariz. 226 [594 P.2d 92 (1979) ], Plaintiff can maintain an action on these notes notwithstanding there was a Trustee's Sale instituted by Plaintiff on a separate deed of trust involving the [same] subject properties.

On appeal, Dynamic argued that Mid Kansas was prohibited from recovering on the promissory notes by the Arizona anti-deficiency statute, A.R.S. § 33–814(G). After the release of our opinion in *Baker,* Dynamic filed a supplemental brief asserting that *Ludi* could no longer be read to permit a residential mortgage holder to waive its security and sue on the note. *See*

*Southwest Sav. & Loan Ass'n v. Ludi,* 122 Ariz. 226, 594 P.2d 92 (1979). Dynamic argued that *Baker* prohibited any attempt to waive the security and sue on the note as a disguised action for deficiency. Therefore, Mid Kansas could not both foreclose the second deed by power of sale and elect to sue Dynamic on the first notes covering the same property.

The court of appeals reversed and remanded the case for entry of judgment for Dynamic. *Mid Kansas Fed. Sav. & Loan Ass'n v. Dynamic Dev. Corp.,* 163 Ariz. 233, 787 P.2d 132 (Ct.App.1989). The court held that under *Baker,* Mid Kansas's attempt to waive the security and sue on the debt was an action for a deficiency, barred after a trustee's sale under § 33–814(G). Judge Brooks concurred in the result, but argued that the case should have been decided according to the principles of merger and extinguishment, rather than under the anti-deficiency statute, because he was "not persuaded that a residential developer may claim the statutory protection against deficiency judgments afforded to homeowners under *Baker v. Gardner.*" *Id.* at 239, 787 P.2d at 138 (Brooks, J., concurring).

Mid Kansas petitioned for review in this court, presenting the following issues for our consideration:

1. Whether commercial developers of residential property who borrow for business purposes are entitled to the benefit of Arizona's consumer anti-deficiency statutes, A.R.S. §§ 33–729(A) and 33–814(G).

2. Whether Arizona's anti-deficiency statutes apply when the encumbered properties are not actually used as residences.

3. Whether a lender's election to waive its security and sue upon a construction loan note secured by a deed of trust constitutes an action for a deficiency prohibited by Arizona's anti-deficiency statutes, A.R.S. §§ 33–729(A) and 33–814(G).

### DISCUSSION

#### A. The Applicability of the Anti–Deficiency Statutes

Arizona has two anti-deficiency statutes. A.R.S. § 33–729(A) applies to purchase

money mortgages and purchase money deeds of trust foreclosed judicially pursuant to the authority of A.R.S. § 33–807(A). A.R.S. § 33–814(G) applies to deeds of trust that are foreclosed by trustee's sale, regardless of whether they represent purchase money obligations. Both sections prohibit a deficiency judgment after sale of a parcel of "property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling." A.R.S. §§ 33–729(A), 33–814(G).

Arizona also has an election of remedies statute within the general law applicable to mortgages. Under A.R.S. § 33–722, a mortgagee can foreclose and seek a deficiency judgment or can sue on the note and then execute on the resultant judgment but cannot bring both actions simultaneously. *See* Washburn, *The Judicial and Legislative Response to Price Inadequacy in Mortgage Foreclosure Sales*, 53 S.CAL.L. REV. 843, 928 (1980). The election statute is intended to protect the debtor from multiple suits and at the same time grant the creditor the benefit of the security.

■ The election statute alters the traditional common law rule that a holder of a note secured by a mortgage has the right to sue on the note alone, to foreclose on the property, or to pursue both remedies at once (although there may be only one recovery on the debt). *See Paramount Ins., Inc. v. Rayson & Smitley*, 86 Nev. 644, 472 P.2d 530, 533 (1970).[2] However, the reach of the statute, as applied to most mortgages, is quite limited. In *Smith v. Mangels*, 73 Ariz. 203, 207, 240 P.2d 168, 170 (1952), this court held the election statute does not preclude a subsequent foreclosure action after judgment on the debt, as is the case

in some other states. *See, e.g.,* Neb.Rev. Stat. §§ 25–2140 and 25–2143 (1989); N.Y. Real Prop.Acts.Law § 1301 (McKinney 1979); S.D.Codified Laws Ann. §§ 21–47–5 and 21–47–6 (1987).

In *Baker*, we held the election statute was limited by the subsequently enacted purchase money mortgage anti-deficiency statute, A.R.S. § 33–729(A), which barred the lender from waiving the security and suing on the debt. 160 Ariz. at 104, 770 P.2d at 772. In so holding, we joined the courts of California and North Carolina in finding that such an election is inconsistent with the anti-deficiency statutes, which limit the lender to recovery from the land itself. *Id.*

*Baker* held that the lender should not be allowed to circumvent the anti-deficiency statute by electing to sue the debtor on the note, thereby realizing any difference between the value of the real property and the amount owed on the debt. As our supplemental opinion pointed out, *Baker's* holding applies whenever the anti-deficiency statutes apply and therefore is not always limited to the purchase money situation. 160 Ariz. at 106–07, 770 P.2d at 774–75. Assuming that the deed of trust falls within one of the anti-deficiency statutes, an action for a deficiency is prohibited after a trustee's sale on any deed of trust and after judicial foreclosure on purchase money deeds of trust. *See* A.R.S. §§ 33–814(G) and 33–729(A). If a lender holds a non-purchase money deed of trust, he *may* recover a deficiency *if* he does so through an action for judicial foreclosure because A.R.S. § 33–729(A) applies only to purchase money liens. In this latter case, of course, the debtor receives the protections of judi-

---

**2.** Under the statutory scheme, the provisions within the law of mortgages (chapter 6 of A.R.S. Title 33) are not applicable to deeds of trust unless the deed of trust is judicially foreclosed as a mortgage pursuant to A.R.S. § 33–807(A). *See* A.R.S. § 33–805. The election statute is within chapter 6. Therefore, the election statute is not applicable to deeds of trust foreclosed by trustee's sale, and there is no analogous stat-

ute within the law applicable to deeds of trust. Dynamic does not contend that the lender lost its common law right to elect among its remedies. *See generally Universal Inv. Co. v. Sahara Motor Inn, Inc.,* 127 Ariz. 213, 215, 619 P.2d 485, 487 (Ct.App.1980) (deed of trust statute does not mandate foreclosure by trustee's sale, but allows option to foreclose as mortgage or bring action on debt).

cial foreclosure, including a statutory redemption right.[3]

■ Read together, therefore, the statutes enact the following scheme: when the holder of a non-purchase money deed of trust of the type described in A.R.S. § 33–814(G) forecloses by non-judicial sale, the statute protects the borrower from a deficiency judgment. The lender therefore may not waive the security and sue on the note. *Baker*, 160 Ariz. at 106, 770 P.2d at 774. The holder may, however, seek to foreclose the deed of trust as if it were a mortgage, as allowed by § 33–814(E); if he does so, the debtor is allowed redemption rights under §§ 33–726 and 12–1281 through 12–1289 and is thus protected from low credit bids, but the holder may recover a deficiency judgment—the difference between the balance of the debt and the sale price—unless the note is a purchase money obligation. In the latter case, the borrower is protected by the mortgage anti-deficiency statute, A.R.S. § 33–729(A), which applies only to purchase money obligations. *Baker*, 160 Ariz. at 106, 770 P.2d at 774.

Thus, if under *Baker* and the facts of this case Dynamic is protected by an anti-deficiency statute, Mid Kansas could not elect to waive its security and sue on the first notes after having already chosen to proceed by trustee's sale under the second deed of trust.

### B. Persons and Properties Included Within the Statutory Definitions

Mid Kansas argues that neither Dynamic, as a developer, nor the property under construction is protected by an anti-deficiency statute. Neither of the statutes is limited to individual homeowners rather than residential developers. Rather, the statutes apparently protect any mortgagor, provided the subject property is a single one- or two-family residential dwelling on two and one-half acres or less.[4]

As we noted in *Baker*, both anti-deficiency statutes were enacted in 1971, along with several other laws designed to protect consumers. 160 Ariz. at 101, 770 P.2d at 769. As with virtually all anti-deficiency statutes, the Arizona provisions were designed to temper the effects of economic recession on mortgagors by precluding "artificial deficiencies resulting from forced sales." *Id.* (quoting Boyd and Balentine, *Arizona's Consumer Legislation: Winning the Battle But ...*, 14 ARIZ.L.REV. 627, 654 (1972)). Anti-deficiency statutes put the burden on the lender or seller to fairly value the property when extending the loan, recognizing that consumers often

---

3. In Arizona, the debtor has no right of statutory redemption after the deed of trust is foreclosed by trustee's sale. A.R.S. § 33–811(B). This is also the rule in California, where deficiency judgments are prohibited after foreclosure by trustee's sale. The following comments regarding the California statute inform our discussion of A.R.S. § 33–814(G):

> The [statute's] purpose ... was to put nonjudicial enforcement of a deed of trust on a par with judicial foreclosure and sale.... [Prior to its enactment] ... [c]reditors preferred private sale because it avoided a statutory period of redemption. By exercising the power instead of foreclosing judicially, the creditor could obtain a deficiency judgment as well as the enhanced proceeds of a redemption-free sale. This procedure allowed the creditor to bid in the property himself at an unfairly low price—or offer that opportunity to someone else—secure in the knowledge that any deficiency would be recoverable in a personal judgment against the principal. Comment, *Exonerating the Surety: Implications of the California Antideficiency Scheme*, 57 CAL.L.REV. 218, 232 (1969).

4. The statutes read as follows (relevant portions emphasized):

> A.R.S. § 33–729(A):
> [I]f a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase price, of *a parcel of real property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling* ... [there shall be no deficiency judgment] ...
> A.R.S. § 33–814(G):
> If *trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling* is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

**128**

are not equipped to make such estimations. *See generally Spangler v. Memel,* 7 Cal.3d 603, 102 Cal.Rptr. 807, 812–13, 498 P.2d 1055, 1060–61 (1972); Leipziger, *Deficiency Judgments in California: The Supreme Court Tries Again,* 22 U.C.L.A. L.REV. 753, 759–61 (1975). Indeed, the articulated purpose behind A.R.S. § 33–729(A) (and presumably behind its deed of trust counterpart, as we held in *Baker*) was to protect "homeowners" from deficiency judgments. *See Baker,* 160 Ariz. at 101, 770 P.2d at 769.

█ However, absent express limiting language in the statute or explicit evidence of legislative intent, we cannot hold that the statute excludes residential developers. Where the language of a statute is plain and unambiguous, courts must generally follow the text as written. *Mid Kansas,* 163 Ariz. at 238, 787 P.2d at 137 (citing *State Farm Mut. Ins. Co. v. Agency Rent–A–Car, Inc.,* 139 Ariz. 201, 203, 677 P.2d 1309, 1311 (Ct.App.1983); *cf. Ritchie v. Grand Canyon Scenic Rides,* 165 Ariz. 460, 799 P.2d 801 (1990) (rule inapplicable where it would produce absurd result)). While we can infer that the legislature's primary intent was to protect individual homeowners rather than commercial developers, neither the statutory text nor legislative history evinces an intent to *exclude* any other type of mortgagor.[5] Indeed, the North Carolina Supreme Court decided to apply a similar anti-deficiency statute to a commercial borrower, finding that the statute expressed no intent to exclude commercial transactions and therefore that the court could not read in such an intent. *Barnaby v. Boardman,* 313 N.C. 565, 330 S.E.2d 600, 603 (1985). Therefore, we hold that so long as the subject properties fit within the statutory definition, the identity of the mortgagor as either a homeowner or developer is irrelevant.

█ In contrast to the lack of legislative limitation as to the type of mortgagor pro-

tected, there is specific textual expression as to the type of property protected. Both statutes require that the property be (1) two and one-half acres or less, (2) limited to and utilized for a dwelling that is (3) single one-family or single two-family in nature. In applying a statute, we have long held that its words are to be given their ordinary meaning, unless the legislature has offered its own definition of the words or it appears from the context that a special meaning was intended. *State Tax Comm'n v. Peck,* 106 Ariz. 394, 395, 476 P.2d 849, 850 (1970).

A.R.S. § 33–814(G) calls for the property to be "limited to" a single one- or two-family dwelling. The word "dwelling" is susceptible to several interpretations, depending on the context of its use. *See* 28 C.J.S. *Dwelling* (1941 and 1990 Supp.). However, the principal element in all such definitions is the "purpose or use of a building for human abode," meaning that the structure is wholly or partially occupied by persons lodging therein at night or *intended* for such use. *Id.; see also Smith v. Second Church of Christ, Scientist,* 87 Ariz. 400, 405, 351 P.2d 1104, 1107 (1960) (defining "dwelling" as "a building suitable for residential purposes").

The anti-deficiency statutes require not only that the property be limited to dwelling purposes, but also that it be "utilized for" such purposes. In *Northern Arizona Properties v. Pinetop Properties Group,* the court of appeals held that an investment condominium, which was occasionally occupied by the owners and occasionally rented out to third persons, fell within the statutory definition. 151 Ariz. 9, 725 P.2d 501 (Ct.App.1986). In deciding that the statute applied to a dwelling used for investment purposes and not as the mortgagor's principal residence, the court employed the definition of "dwelling" in Webster's Ninth New Collegiate Dictionary and

---

**5.** We take notice of the fact that the legislature has included such a limitation in other statutory provisions. For example, A.R.S. § 33–806.01(D), which deals with a trustee's right to transfer his interest in trust property, applies only to trust property that is limited to and utilized for dwelling units and that is *not* used for commercial purposes.

in several housing codes as "a shelter ... in which people live." Hence, although the condominium was held as an investment, it was also used (utilized) as a dwelling. *Id.* at 12, 725 P.2d at 504.

 In contrast to the *Northern Arizona Properties* case, the property in question here had never been used as a dwelling, and was in fact not yet susceptible of being used as a dwelling. There is a difference between property intended for eventual use as a dwelling and property utilized as a dwelling. We hold that commercial residential properties held by the mortgagor for construction and eventual *resale* as dwellings are not within the definition of properties "limited to" and *"utilized for"* single-family dwellings. The property is not utilized as a dwelling when it is unfinished, has never been lived in, and is being held for sale to its first occupant by an owner who has no intent to ever occupy the property. *Cf. Northern Arizona Properties* (mortgagors intended to occupy property occasionally and rent it out).

Therefore, we hold that by its terms, the anti-deficiency statute does not apply to Dynamic in this case and A.R.S. § 33–814(G) does not preclude Mid Kansas from waiving its security and bringing a debt action on the notes.[6]

## C. The Doctrine of Merger and Extinguishment

Because we hold that the anti-deficiency statute does not apply, we must reach the merger and extinguishment issue that is the basis of the concurring opinion in the court of appeals. Dynamic listed that issue

for our consideration under Rule 23(c), Ariz.R.Civ.App.P., 17B A.R.S., as an issue not decided by the court of appeals but that would need to be addressed if the court of appeals' opinion were reversed.[7]

### 1. *Merger of Estates*

 As Dynamic has noted, the facts in this case provide the basis for two merger arguments. The first is the theory of merger of estates. Generally, when one person obtains both a greater and a lesser interest in the same property, and no intermediate interest exists in another person, a merger occurs and the lesser interest is extinguished. 3 R. POWELL, THE LAW OF REAL PROPERTY § 459 (1990 Rev.). Thus, merger may occur when a mortgagee's interest and the fee title are owned by the same person. *Id.* The potential for merger arises whenever a mortgagee acquires the mortgagor's equity of redemption. However, even if a merger would otherwise occur at law, contrary intent or equitable considerations may preclude this result under appropriate circumstances. 2 L. JONES, THE LAW OF MORTGAGES § 1080 (8th ed. 1928). This court has long recognized these general rules of merger of estates. *Bowman v. Cook*, 101 Ariz. 366, 419 P.2d 723 (1966); *Hathaway v. Neal*, 31 Ariz. 155, 251 P. 173 (1926).

We assume, therefore, no one arguing to the contrary, that when Mid Kansas acquired title on the foreclosure of its *second* lien, its rights under *that* lien were merged in the title. *See Bowman*, 101 Ariz. at 367, 419 P.2d at 724. The question before us, however, is somewhat different. Today we must consider if Mid Kansas's rights under

6. Because we conclude that Dynamic is not protected by the anti-deficiency statute, we do not reach the issue of whether Mid Kansas's action on the first notes would have constituted an action for deficiency under *Baker* or an action on an "independent obligation" under *Ludi*. In *Ludi*, as in *Baker*, two notes were secured by the same real estate. However, unlike *Baker*, the second note in *Ludi* was given to obtain a home improvement loan and therefore was "independent from" the first note, given to secure a purchase money deed of trust. *Ludi*, 122 Ariz. at 228, 594 P.2d at 94. We note that, in any

case, *Ludi* is not in direct conflict with *Baker* because the lender in *Ludi* used a judicial proceeding to foreclose its first deed of trust before bringing an action on the second, non-purchase money obligation. *Id.* at 227, 594 P.2d at 93.

7. In its response, Dynamic characterizes this issue as one involving unjust enrichment and election of remedies. The doctrine takes into consideration a little of both, but is more properly characterized as merger and extinguishment.

the *first* lien were affected when it acquired title by foreclosure on its *second* lien.

### 2. *Merger of Rights*

 Where the same mortgagee holds both a first and second mortgage on the mortgagor's land, and becomes the purchaser at the foreclosure sale of one of the mortgages, the question of merger of *rights*—often called extinguishment—arises. The merger of rights doctrine addresses the narrow question of whether the mortgagor's personal liability on the senior debt has been discharged. *Wright v. Anderson*, 62 S.D. 444, 253 N.W. 484, 487 (1934). The primary issue in the doctrine of merger of rights is whether the lender would be unjustly enriched if he were permitted to enforce the debt. *See generally* Burkhart, *Freeing Mortgages of Merger*, 40 VAND.L.REV. 283, 382 (1987).

 Although the mortgagee's purchase of the property at the foreclosure of the senior mortgage will not extinguish the debt secured by a junior mortgage, the reverse is true where the junior mortgage is foreclosed. If one holding both junior and senior mortgages forecloses the junior and purchases the property at the foreclosure sale, the long-standing rule is that, absent a contrary agreement, the mortgagor's personal liability for the debt secured by the first mortgage is extinguished. G. NELSON & D. WHITMAN, REAL ESTATE FINANCE LAW § 6.16, at 467 (2d ed. 1985). The rule has been followed for generations. *See Board of Trustees of the Gen. Retirement Sys. v. Ren–Cen Indoor Tennis & Racquet Club*, 145 Mich.App. 318, 377 N.W.2d 432 (1985), *appeal denied*, 425 Mich. 875, 388 N.W.2d 680 (1986); *Tri–County Bank & Trust Co. v. Watts*, 234 Neb. 124, 449 N.W.2d 537 (1989); Annotation, *Union of Title to Mortgage and Fee in Same Person as Affecting Right to Personal Judgment for Mortgage Debt*, 95 A.L.R. 89, 104–105 (1935) (citing *Belleville Sav. Bank v. Reis*, 136 Ill. 242, 26 N.E. 646 (1891)); *McDonald v. Magirl*, 97 Iowa 677, 66 N.W. 904 (1896); *Wright*, 253 N.W. 484; *see also* 2 G. GLENN, MORTGAGES § 337, at 1408 (1943).

 The basis of the merger of rights doctrine is that the purchaser at a foreclosure sale of a junior lien takes subject to all senior liens. *Ren–Cen Club*, 377 N.W.2d at 434; *Wright*, 253 N.W. at 487; *see also* Burkhart, *supra*, 40 VAND.L. REV. at 377. Although the purchaser does not become personally liable on the senior debt (as does an assuming grantee), the purchaser must pay it to avoid the risk of losing his newly acquired land to foreclosure by the senior lienholder. Therefore, the land becomes the primary fund for the senior debt, and the purchaser is presumed to have deducted the amount of the senior liens from the amount he bids for the land. *Tri–County Bank*, 449 N.W.2d at 541.[8] As the court in *Wright* explained, when the same mortgagee holds both the junior and senior mortgages on the land and buys at the foreclosure sale of the junior mortgage:

> The mortgagor ... has an equitable right to have the land pay the mortgage before his personal liability is called upon and the purchaser will not be permitted to retain the land ... and enforce the same against the mortgagor personally.

253 N.W. at 487. Similarly, the court in *Ren–Cen Club* noted that

> [t]he indebtedness will be presumed to have been discharged. so soon as the holder of it becomes invested with title to the land upon which it is charged, on the principle that a party may not sue himself at law or in equity. The purchaser is presumed to have bought the land at its value, less the amount of indebtedness secured thereon, and equity will not

---

**8.** In a transfer "subject to" the senior mortgage, the essence of the transaction is that "the transferee agrees, as between her and her transferor, that the debt is to be satisfied out of the land." NELSON & WHITMAN, *supra*, § 5.3, at 271.

permit him to hold the land and still collect the debt from the mortgagor.

377 N.W.2d at 435 (quoting *Belleville Savings Bank v. Reis,* 136 Ill. 242, 26 N.E. 646, 647 (1891) (citations omitted)).

 Thus, the merger of rights doctrine holds that the senior lien is merged into—or extinguished by—the title acquired by the lienholder when he acquires the mortgagor's equity of redemption under a sale on the junior lien. Of course, this rule comes into play only when the equity of redemption is extinguished. *See Wright,* 253 N.W. at 487; 2 JONES, *supra,* § 1080, at 514. Although the deed of trust is a relatively new instrument that postdates cases such as *Wright* and *Belleville,* we find the doctrine of merger and extinguishment even more compelling under a modern deed of trust statute, which cuts off the borrower's equity of redemption at the time of the trustee's sale. *See* A.R.S. § 33–811(B). In *Patton v. First Federal Savings & Loan Ass'n,* we commented on the unique features of the deed of trust that required a strict construction in favor of the borrower:

> Compared to mortgage requirements, the Deed of Trust procedures authorized by statute make it far easier for lenders to forfeit the borrower's interest in the real estate securing a loan, and also abrogate the right of redemption after sale guaranteed under a mortgage foreclosure.... [U]nder a Deed of Trust, the trustee holds a power of sale permitting him to sell the property out of court with no necessity of judicial action. The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower.

118 Ariz. 473, 477, 578 P.2d 152, 156 (1978).

As we have previously noted, even where a merger would otherwise occur at law, an express agreement between the parties that no merger shall occur often precludes such a finding by the court. NELSON & WHITMAN, *supra,* § 6.16, at 467 (citing *Toston v. Utah Mortgage Loan Co.,* 115 F.2d 560 (C.C.A.Idaho 1940); *Continental Title & Trust Co. v. Devlin,* 209 Pa. 380, 58 A. 843 (1904); *Van Woerden v. Union Improvement Co.,* 156 Wash. 555, 287 P. 870 (1930)). Of course, where the mortgagee acquires title to the property through an involuntary conveyance, such as foreclosure, the parties obviously will not have formed a mutual intent concerning the continued enforceability of the debt. Burkhart, *supra,* 40 VAND.L.REV. at 377.

 However, such an intent may be implied under circumstances that would make a finding of merger inequitable to the parties. The dissent in *Wright,* for instance, argued that where the mortgagee paid the full value of the property without deducting the amount of the prior lien, the rule of merger should not apply. 253 N.W. at 489 (Polley, J., dissenting). This argument was adopted by a recent decision that allowed a bank to retain its claim for the unsecured deficiency remaining on the first mortgage even though the bank purchased the property at the foreclosure sale on the second mortgage. *In re Richardson,* 48 B.R. 141 (Bkrtcy, E.D.Tenn.1985). The court found that the bank had not tried to take unfair advantage of the debtor because its bid had reflected the value of the property and the bank had, in addition, credited the debtors with the amount beyond the bid it received on reselling the property. *Id.* at 142. A different result would obtain where the mortgagee is permitted to keep land that is worth as much as the two mortgage debts and also allowed to collect on the senior debt. In the latter situation, the mortgagee would be unjustly enriched, and the merger doctrine is appropriately applied to destroy the senior debt. NELSON & WHITMAN, *supra,* § 6.16, at 467–68.

 The facts in this case clearly illustrate and require application of the doctrine

of merger and extinguishment; they also demonstrate that no equitable exception is appropriate here. Mid Kansas held the four first deeds of trust and the second blanket deed of trust on the four lots. Mid Kansas purchased all four pieces of property with a credit bid of the amount due on the second lien, $101,986.67. Mid Kansas thus acquired free and clear title to improved property apparently worth between $555,750 and $608,000.[9] Even accepting the lower figure, it is apparent that the sum of the junior and senior liens ($527,-236.67—exclusive of interest and costs) on the property at the relevant time—the date of the foreclosure sale—was probably less than the value of the property. Mid Kansas obviously tendered a credit bid that was discounted by the amount of the senior liens. Therefore, Mid Kansas would be unjustly enriched were we to allow it to acquire, for $100,000, property worth over $500,000 and also sue Dynamic for another $400,000 under the first notes. Mid Kansas does not contend that the property it acquired was worth less than the total owed on the first and second liens.

On these facts, we hold that the doctrine of merger and extinguishment applies. *See Ren–Cen Club*, 377 N.W.2d at 436 (equity will not assist plaintiff in obtaining the price advantage of purchasing at a second mortgage sale without the disadvantage of having to satisfy the debt secured by the first mortgage). Because the holder of the senior lien acquired title, free from any equity of redemption, on the foreclosure of the junior lien, the doctrine of merger extinguishes the maker's liability on the senior notes.[10] This result is supported by other courts that have applied the doctrine of merger and extinguishment and held that the debt secured by the first mortgage is discharged when the senior mortgagee acquires the property at a sale on the second mortgage and the price at foreclosure sale is depressed to reflect the outstanding first mortgage. *See, e.g., Ren–Cen Club*, 377 N.W.2d 432; *Tri-County Bank*, 449 N.W.2d 537; *see also* authorities cited in Annot., *supra*, 95 A.L.R. at 104–105.

## CONCLUSION

The anti-deficiency statute, A.R.S. § 33–814(G), does not apply to Dynamic in this case because the homes under construction were not utilized for single-family dwellings. We vacate the court of appeals' opinion and reverse the trial court's judgment. The case is remanded to the trial court for proceedings consistent with this opinion. On remand, the parties will have the opportunity to present evidence as to the value of the property at the time of the foreclosure sale. If the facts are as they appear on this record, equity will require no exception to the doctrine of merger and extinguishment. If Dynamic prevails, it will be eligible for its attorney's fees subject to Rule 21, Ariz.R.Civ.App.P., 17B A.R.S.

GORDON, C.J., and MOELLER and CORCORAN, JJ., concur.

CAMERON, Justice, dissenting in part, concurring in part.

I concur in the result the majority ultimately reaches. However, because of my dissent in *Baker v. Gardner*, 160 Ariz. 98, 770 P.2d 766 (1988), I write separately. In *Baker* I did not agree with the majority

---

**9.** The value of the properties, as listed on the IRS Statements of Acquisition or Abandonment of Secured Property filed by Mid Kansas, totalled $555,750. Mid Kansas submitted appraisals to the trial court estimating the value of the lots, if completed in accordance with the plans and specifications, at $608,000. Ironically, the IRS statements filed by Mid Kansas stated that the "borrower was not personally liable for repayment of the debt," although Mid Kansas attributes this to "clerical error" and has since "corrected" the forms.

**10.** We note that our legislature has specifically curtailed a lender's ability to obtain a judgment against the debtor in excess of the fair value of the land in those cases where a deficiency judgment is permitted. *See* A.R.S. § 33–814(A). We find this legislative proscription against unjust enrichment persuasive in our present holding.

that A.R.S. § 33–722 conflicted with A.R.S. § 33–729(A) and § 33–814(E).[11] *Id.* at 105, 770 P.2d at 774. It was my belief then, and now, that *any* creditor has the right under § 33–722 to elect either to foreclose on the mortgage *or* to sue on the note. *Id.* at 105, 770 P.2d at 774. Once the creditor chooses to foreclose, the anti-deficiency statutes apply, and he cannot seek a deficiency judgment. *Id.*

The majority reiterates the rationale of *Baker*, noting that if the anti-deficiency statutes include Dynamic, Mid Kansas would be precluded from waiving its security and could not sue on the first note after having foreclosed on the second note. Next, the majority determines whether Dynamic, as a commercial developer, is protected by the anti-deficiency statutes. Noting the statutes' purpose was to protect "homeowners" from deficiency judgments and to protect consumers who were not sophisticated enough to value property when seeking a loan, the majority includes commercial developers as mortgagors within statutory protection. Commercial developers, however, are business people who are capable of valuing their business enterprises when seeking commercial or construction loans. They are neither unsophisticated consumers nor "homeowners."

After determining that Dynamic falls within the class of persons protected by the statutes, the majority then notes that the property in question does not fit the statutory language. The majority stated that "commercial residential properties held by the mortgagor for construction and eventual *resale* as dwellings are not within the definition of properties 'limited to' and '*utilized* for' ... dwellings." At 129, 804 P.2d at 1317. Commercial developers are generously included as mortgagors covered under the statutes, but excluded due to the type of property they hold. Again, I believe this is wrong. The majority's interpretation of "dwelling" and "utilized for" means that a commercial developer's property will never meet the statutory lan-

guage. By applying the reasoning of my dissent in *Baker*, we could have more easily and clearly reached the majority's result, without having to extend empty statutory protection. I believe that the anti-deficiency statutes were not intended to cover commercial developers and, therefore, Mid Kansas has the right to elect to foreclose or to sue on the first note.

I agree with the majority's ultimate disposition of this case. Mid Kansas should not be allowed to experience a windfall by foreclosing on the second note and later suing on the first note. As the majority points out, Mid Kansas gave a credit bid equal to the amount due on the second note ($101,986) and received improved property worth approximately $550,000–$600,000. They now want to collect the balance due on the first note. By using the doctrine of merger and extinguishment, the majority reached the right result.

---

11. A.R.S. § 33–814(E) is now codified as § 33–814(G).