258 P.3d 229

**UNITED INSURANCE COMPANY OF AMERICA, an Illinois insurance company, Plaintiff/Appellant,**

v.

**Erik T. LUTZ and Amy K. Lutz, husband and wife, Defendants/Appellees.**

No. 1 CA–CV 10–0464.

Court of Appeals of Arizona, Division 1, Department D.

June 16, 2011.

---

Brier, Irish, Hubbard & Erhart, PLC By Timothy H. Barnes, Craig T. Irish, Phoenix, Attorneys for Plaintiff/Appellant.

Titus, Brueckner, Levine & Johnson, PC By David A. Fitzgerald, Scottsdale, Attorneys for Defendants/Appellees.

## OPINION

IRVINE, Judge.

¶ 1 United Insurance Company of America ("United") appeals the superior court's summary judgment in favor of Erik T. and Amy K. Lutz on United's claim for breach of guaranty. For the following reasons, we reverse and remand this matter for further proceedings.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Eric and Amy Lutz were the sole members of WKL, LLC. In July 2003, WKL entered into a contract to purchase a building at 17015 North Scottsdale Road from North Scottsdale Gateway, LLC ("Gateway"). In October 2003, before WKL completed the purchase, it leased office space in the building from Gateway (the "Gateway Lease"). The Lutzes executed an Unconditional Guaranty, agreeing to pay WKL's obligations under the Gateway Lease in the event WKL defaulted.

¶ 3 On February 11, 2004, WKL and United entered into a Real Estate Purchase and Sale Agreement (the "Resale Agreement") in which WKL agreed that, once it acquired the building, it would sell it to United. On March 17, 2004, WKL and Gateway amended the Gateway Lease ("First Amendment"), and the Lutzes expressly extended their Unconditional Guaranty. WKL purchased the building from Gateway on March 31, 2004, and conveyed it to United later that day. Four years later, United filed this action against WKL for breach of lease and against the Lutzes for breach of the Unconditional Guaranty. The Lutzes moved for summary judgment arguing the Gateway Lease terminated by operation of law when WKL acquired the building, and they had not guaranteed WKL's subsequent lease with United. United opposed the motion and cross-moved for summary judgment, arguing that WKL's acquisition of title to the building had not extinguished the Gateway Lease, and therefore the Unconditional Guaranty continued in effect after the transfer of the building from WKL to United.

¶ 4 The Lutzes moved to strike numerous facts set forth by United, claiming they were

irrelevant to the legal questions raised in the cross-motions for summary judgment. United moved to strike several of the Lutzes' statements of fact on the grounds that they were irrelevant, inadmissible hearsay, or improper opinion testimony. The superior court granted both motions.

¶ 5 The court granted the Lutzes' motion for summary judgment and denied United's cross-motion, ruling that the common law doctrine of merger extinguished WKL's obligations under the Gateway Lease, the Unconditional Guaranty was therefore no longer in effect, and the Lutzes did not guarantee a subsequent lease. The court entered judgment for the Lutzes, finding no just reason for delay.

¶ 6 United timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

### DISCUSSION

¶ 7 United contends the superior court erred in granting the Lutzes' motion to strike evidence of the parties' intent and in ruling that the Gateway Lease was extinguished under the common law doctrine of merger. We agree.

¶ 8 A court may grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz.R.Civ.P. 56(c). We view the evidence in the light most favorable to United, against whom judgment was entered, and determine de novo whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Unique Equip. Co., Inc. v. TRW Vehicle Safety Sys., Inc.,* 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999). We will affirm the entry of summary judgment if it is correct for any reason. *Sanchez v. Tucson Orthopaedic Inst.,* 220 Ariz. 37, 39, ¶ 7, 202 P.3d 502, 504 (App.2008).

¶ 9 The doctrine of merger of estates provides: "Generally, when one person obtains both a greater and a lesser interest in the same property, and no intermediate interest exists in another person, a merger occurs and the lesser interest is extin-

guished." *Mid Kansas Fed. Savings and Loan Ass'n of Wichita v. Dynamic Dev. Corp.,* 167 Ariz. 122, 129, 804 P.2d 1310, 1317 (1991). "However, even if a merger would otherwise occur at law, contrary intent or equitable considerations may preclude [merger] under appropriate circumstances." *Id.; see also Anthony L. Petters Diner, Inc. v. Stellakis,* 202 N.J.Super. 11, 493 A.2d 1261 (1985) ("[T]he presumption of merger may be overcome not only by an expressly declared intention to the contrary, but also by indications of a contrary intention or by such an intention which may appear from the particular equities of the case.") (citations and internal quotations omitted).

¶ 10 The Lutzes rely exclusively on the common law rule that a tenancy merged by operation of law if the same person also held the reversion interest. *See Byrd v. Peterson,* 66 Ariz. 253, 258, 186 P.2d 955, 958 (1947) (citing 32 Am.Jur. *Landlord and Tenant* § 824). That rule is now considered to be "inflexible" and "practically extinct" because it deemed the intent of the parties immaterial to the question of merger. 28 Am.Jur.2d *Estates* § 425 (2000).

¶ 11 Under the modern rule, "equity will prevent or permit a merger of estates as best serves the purpose of justice and the actual intent of the parties, whether express or implied ...." *Id.* at § 426 (2000). In the landlord-tenant context, that means:

> The execution of a sale for real property between a landlord and tenant serves to merge the landlord-tenant relationship into the vendor-vendee relationship and thus effectively terminates the former, *unless the parties clearly intend the contrary result.*

49 Am.Jur.2d *Landlord and Tenant* § 195 (2006) (emphasis added). This modern rule is reflected in *Mid Kansas,* a decision by the Arizona Supreme Court. *See* 167 Ariz. at 129, 804 P.2d at 1317.

¶ 12 The Lutzes argue that the exceptions to the general rule of merger stated in *Mid Kansas* do not apply because this case involves a lease, not a mortgage or deed of trust. We disagree. Although *Mid Kansas* was decided in the factual context of mort-

gages and deeds of trusts, 167 Ariz. at 132, 804 P.2d at 1320, nothing limits its holding to those cases. We therefore hold that with leases, as with other estates, evidence of contrary intent or other equitable considerations may preclude the finding of merger. *Id.*

¶ 13 In this case, the superior court found that because the merger doctrine applied, the Gateway Lease was extinguished as a matter of law when WKL acquired the building. The court granted summary judgment for the Lutzes on United's claim for breach of guaranty because there was no evidence the Lutzes had guaranteed another lease. *See Westcor Co. Ltd. P'ship v. Pickering,* 164 Ariz. 521, 524, 794 P.2d 154, 157 (App.1990) (holding written guarantee did not apply to new lease entered by landlord and tenant after first lease expired by its terms).

¶ 14 United did not dispute that the Unconditional Guaranty would not apply to a new lease between WKL and United, but argued there was no new lease because the parties did not intend for the Gateway lease to merge. In particular, United cited several provisions in the Resale Agreement that it claimed evidenced the parties' intent that WKL would convey the Gateway Lease to United as part of its purchase of the building. For example, the Resale Agreement provided that WKL would assign its interest in the building leases to United at closing, and both the Resale Agreement and the Assignment and Assumption of Leases executed by WKL contained a rent schedule identifying WKL's lease.

¶ 15 In addition, United pointed out that on March 25, 2004, WKL and United amended the Resale Agreement to provide that when their transaction closed they would execute a document entitled Second Lease Amendment. The Second Lease Amendment identified United as "Landlord" and WKL as "Tenant" under the Gateway Lease and stated, in relevant part:

Notwithstanding the acquisition of the real estate on which the Premises are located by [WKL], from [Gateway], *the [Gateway Lease] shall not merge into [WKL's] ownership of said real estate or otherwise be*

*affected thereby;* and the parties agree that the [Gateway Lease] is and shall remain in full force [and] effect in accordance with the terms and conditions thereof. The parties hereto specifically reaffirm and restate the [Gateway Lease] and all of the terms and conditions thereof.

(Emphasis added.) United contended this document further evidenced the parties' agreement and intention that the Gateway Lease would not merge into WKL's ownership of the building, but would continue in full force and effect. Although the Lutzes argue that these documents were executed after the Resale Agreement closed and United should be estopped from asserting otherwise by allegations in its complaint, we do not find the allegations contradict the evidence regarding the execution of the Second Lease Amendment. *Cf. Adams v. Bear,* 87 Ariz. 288, 294, 350 P.2d 751, 755 (1960) (stating a party is bound by its pleadings and may not admit evidence to contradict its allegations).

¶ 16 United offered further evidence that Eric Lutz knew that WKL's tenancy was a substantial reason United wanted to purchase the building. United pointed out that Mr. Lutz testified at his deposition that when he signed the Second Lease Amendment, he knew United wanted the Gateway Lease to continue and that he intended that WKL would occupy the building under the Gateway Lease after United purchased the building.

¶ 17 The superior court did not consider this evidence because it granted the Lutzes' motion to strike the evidence as irrelevant to the question of whether the doctrine of merger applied as a matter of law. This ruling was erroneous because the intentions of United, WKL and the Lutzes were all relevant.

¶ 18 " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz.R.Evid. 401. "[T]he question of merger inevitably involves the question of intent." 28 Am.Jur.2d *Estates* § 426.

¶ 19 United's evidence was relevant to the question of whether the parties agreed that the Gateway Lease would survive WKL's acquisition of title to the building. *See Mid Kansas*, 167 Ariz. at 131, 804 P.2d at 1319 (holding that an agreement between the parties that no merger shall occur precludes a finding of merger). The court erred in striking this evidence, and its ruling prejudiced United by preventing it from showing that a material question of fact exists concerning whether the parties' contrary intent precluded merger. *See Mohave Elec. Coop. v. Byers*, 189 Ariz. 292, 301, 942 P.2d 451, 460 (App.1997) (stating appellate court will not disturb the trial court's rulings regarding the admissibility of evidence in summary judgment proceedings absent a clear abuse of discretion and resulting prejudice).

¶ 20 In sum, United offered evidence that the parties did not intend for the Gateway Lease to merge with WKL's title to the building. Although the Lutzes argue that the evidence does not show the Lutzes intended to personally guarantee WKL's obligations to United, the evidence was sufficient to raise a question of material fact precluding summary judgment for the Lutzes on United's breach of guaranty claim. Because we remand on this basis, we need not reach United's argument that it had an equitable "intermediate interest" arising out of the Resale Agreement that precluded merger of the Gateway Lease.

¶ 21 Finally, the Lutzes argue that we should affirm on the alternative ground that, even if the Gateway Lease had not merged, the Second Lease Amendment was a new lease because it materially modified the Gateway Lease. We decline to address this argument because the Lutzes fail to identify any material terms in the Gateway Lease that were purportedly modified in the Second Lease Amendment.

## CONCLUSION

¶ 22 For the foregoing reasons, we reverse and remand for further proceedings consistent with this decision. Both parties request an award of attorneys' fees and costs on appeal. When the superior court determines the prevailing party on remand, it may consider the amount of fees and costs incurred by that party on appeal in determining whether and how much to award as reasonable attorneys' fees.

CONCURRING: JOHN C. GEMMILL, Judge, and ANN A. SCOTT TIMMER, Chief Judge.