268 P.3d 1135

**M & I MARSHALL & ILSLEY BANK, Plaintiff/Appellant,**

v.

**Trevis MUELLER and Lisa Mueller, Defendants/Appellees.**

**No. 1 CA–CV 10–0804.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 27, 2011.

The Cavanagh Law Firm by Philip G. Mitchell, Taylor C. Young, Phoenix, Attorneys for Plaintiff/Appellant.

Napier, Abdo, Coury & Baillie, P.C. by James P. Abdo, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

IRVINE, Judge.

¶ 1 M & I Marshall & Ilsley Bank ("M & I") timely appeals from judgment in favor of Trevis Mueller and Lisa Mueller (collectively the "Muellers") on its claim for a deficiency judgment. M & I relies on *Mid Kansas Federal Savings and Loan Association of Wichita v. Dynamic Development Corporation*, 167 Ariz. 122, 804 P.2d 1310 (1991), to argue that Arizona's anti-deficiency statute does not bar its claim. This case is distinguishable from *Mid Kansas*. Although the Muellers never actually occupied the dwelling, they intended to personally occupy it upon its completion. Therefore, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In 2005, the Muellers purchased a plot of vacant land (the "Property") in Arizona. In June 2006, the Muellers borrowed $444,000 from M & I to construct a single-family home on the Property for their own use. To secure the loan, the Muellers executed a deed of trust with M & I. Construction on the home began in March 2007.

¶ 3 Several months into construction, the Muellers discovered that the contractor was behind schedule, and much of the construction was defective. The Muellers notified M & I that they would need advances on loan disbursements to remedy the defects. M & I did not disburse additional funds, and the Muellers abandoned the Property and defaulted on the note.

¶ 4 In September 2009, M & I instituted a non-judicial trustee's foreclosure sale of the Property. After foreclosing on the Property, M & I filed an action against the Muellers seeking to recover a deficiency judgment for $68,196.91, the difference between the amount the Muellers still owed and the appraised value of the home prior to the foreclosure sale. The trial court dismissed M & I's deficiency claim, finding as a matter of law that the Muellers were entitled to anti-deficiency protection under Arizona Revised Statutes ("A.R.S.") section 33–814(G) (2010).

¶ 5 M & I timely appeals.

## DISCUSSION

¶ 6 M & I argues that the trial court erred when it applied A.R.S. § 33–814(G) to bar M & I's deficiency claim as a matter of law. A.R.S. § 33–814(G) states:

> If trust property of two and one-half acres or less *which is limited to and utilized for* either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

(Emphasis added.)

¶ 7 M & I asserts that the Muellers are not entitled to anti-deficiency protection because a home was never constructed on the Property; therefore, the trust property was never "utilized" for a single-family home. M & I relies on our supreme court's decision in *Mid Kansas*, 167 Ariz. at 122, 804 P.2d at 1310, to support its argument. In *Mid Kansas*, a commercial homebuilder defaulted on a loan that was to be used to construct homes for resale. *Id.* at 124–25, 804 P.2d at 1312–13. The homebuilder sought protection under A.R.S. § 33–814(G); *id.* at 129, 804 P.2d at 1317. As is the case here, the homes were not yet fully constructed. *Id.* The lender argued that because the homes were not fully constructed, they were not being "utilized" for a single-family home, and the homebuilder should therefore not receive protection under the anti-deficiency statute. *Id.*

¶ 8 The supreme court stated:

[C]ommercial residential properties held by the mortgagor for construction and eventual *resale* as dwellings are not within the definition of properties "limited to" and *"utilized* for" single-family dwellings. [Emphasis in original.] The property is not utilized as a dwelling when it is unfinished, has never been lived in, *and is being held for sale to its first occupant by an owner who has no intent to ever occupy the property.*

*Id.* (emphasis added). *Cf. N. Ariz. Props. v. Pinetop Props. Grp.,* 151 Ariz. 9, 12, 725 P.2d 501, 504 (App.1986) (holding that an investment condominium, which was occasionally occupied by the owners and occasionally rented out to third persons, was "utilized" as a "dwelling").

█ ¶ 9 This case is distinguishable from *Mid Kansas.* Unlike the situation in *Mid Kansas,* where the borrower was a corporation that never intended to occupy the property, the Muellers intended to live in the single-family home upon its completion. The primary purpose of the Arizona anti-deficiency statutes is to protect "homeowners" from deficiency judgments—not to afford protection to commercial homebuilders. *Baker v. Gardner,* 160 Ariz. 98, 101, 770 P.2d 766, 769 (1989).[1] The supreme court in *Mid Kansas* held that "the identity of the mortgagor as either a homeowner or developer is irrelevant" for purposes of applying the anti-deficiency statute, but we conclude it is relevant to determine whether the property will be "utilized" for a single-family home. *Id.* at 128, 804 P.2d at 1316. Although M & I places great weight on the supreme court's statement that the dwelling was unfinished, we conclude that this fact did not form the basis for its decision. The result in *Mid Kansas* would have been the same even if the homebuilder had completed the homes be-

cause it would not have "utilized" the properties as single-family homes.

¶ 10 Our interpretation of *Mid Kansas* is consistent with the intent of the Arizona legislature to protect homeowners. M & I's argument that a person has to physically inhabit the dwelling would create a blurry and artificial line. An individual facing the possibility of foreclosure may camp out in the unfinished home, claiming to be "utilizing" the dwelling. Additionally, a person who lived in a new home for a day would be entitled to anti-deficiency protection, whereas someone who had not yet moved into a newly constructed home would not be entitled to such protection.

¶ 11 We note that the supreme court itself limited its holding in *Mid Kansas* to its specific facts: "Therefore, we hold that by its terms, the anti-deficiency statute does not apply to [the commercial home builder] *in this case." Id.* at 129, 804 P.2d at 1317 (emphasis added). Our supreme court could have simply stated that a property is not "utilized" as a dwelling when it is unfinished. Instead, the court stated that "property is not utilized as a dwelling when it is unfinished, has never been lived in, *and is being held for sale to its first occupant by an owner who has no intent to ever occupy the property."* 167 Ariz. at 129, 804 P.2d at 1317 (emphasis added). In contrast, the Muellers purchased the property with the purpose of occupying the dwelling upon completion. Under these circumstances, we agree with the trial court that A.R.S. § 33–814(G) protects the Muellers from a deficiency judgment.

## CONCLUSION

¶ 12 For these reasons, we conclude that the trial court correctly applied the law, and the Muellers were entitled to judgment as a

---

1. *See also* Emily Gildar, *Arizona's Anti–Deficiency Statutes: Ensuring Consumer Protection in a Foreclosure Crisis,* 42 Ariz. St. L.J. 1019, 1020 (2010) (noting that Arizona first developed anti-deficiency protection in the 1970's in the midst of a larger movement to protect consumers); James B. Hughes, Jr., *Taking Personal Responsibility: A Different View of Mortgage Antideficiency and Redemption Statutes,* 39 Ariz. L.R. 117, 128 (1997) (asserting that anti-deficiency statutes

discourage lenders from financing the purchase of a property that is overvalued by shifting the burden of falling real estate prices from the borrower to the lender); Kurt A. Johnson, *Guarantor Deficiency Judgment liability Under Arizona Revised Statutes Annotated Section 33–814,* 22 Ariz. St. L.J. 797, 808 (1990) (noting that states first developed anti-deficiency protection to alleviate obligor hardship upon default).

matter of law. Because M & I did not prevail on appeal, we deny its request for attorneys' fees.

¶ 13 We affirm.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and DANIEL A. BARKER, Judge.