IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

BMO HARRIS BANK, N.A., AS SUCCESSOR TO M&I MARSHALL & ILSLEY BANK,
*Plaintiff/Appellant,*

*v.*

WILDWOOD CREEK RANCH, LLC; SHAUN F. RUDGEAR AND KRISTINA B. RUDGEAR, AS HUSBAND AND WIFE,
*Defendants/Appellees.*

No. CV-14-0101-PR
Filed January 23, 2015

Appeal from the Superior Court in Maricopa County
The Honorable Colleen L. French, Judge Pro Tempore
No. CV2011-021586
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
234 Ariz. 100, 317 P.3d 641 (App. 2014)
**VACATED**

COUNSEL:

Jeffrey J. Goulder (argued), James E. Holland, Jr., Stefan M. Palys, Stinson Leonard Street LLP, Phoenix, for BMO Harris Bank, N.A.

Geoffrey S. Kercsmar (argued), Julia A. Guinane, Kercsmar & Feltus PLLC, Scottsdale, for Wildwood Creek Ranch, LLC and Shaun and Kristina Rudgear

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER and JUSTICES BERCH, BRUTINEL, and TIMMER joined.

CHIEF JUSTICE BALES, opinion of the Court:

¶1          Arizona's residential anti-deficiency statute, A.R.S. § 33-814(G), applies to certain property utilized for a dwelling. We hold that the

statute does not bar a deficiency judgment against an owner of vacant property. For § 33-814(G) to apply, a dwelling must have been completed.

**I.**

¶2          Shaun and Kristina Rudgear own Wildwood Creek Ranch, LLC. In 2006, the Rudgears, through Wildwood, borrowed $260,200 from the predecessor to BMO Harris Bank to fund construction of a home on a vacant 2.26-acre lot. The loan was secured by a deed of trust and personally guaranteed by the Rudgears. Construction of the home never began and the lot remained undeveloped.

¶3          Wildwood renewed the note in 2009 and then defaulted in 2011. BMO foreclosed on the property via a trustee's sale. A third party successfully bid $31,100 for the property, and BMO thereafter sued Wildwood and the Rudgears for the deficiency.

¶4          The parties cross-moved for partial summary judgment. The Rudgears argued that they intended to use the completed home as their primary residence and were thus protected from deficiency liability under § 33-814(G) and *M & I Marshall & Ilsley Bank v. Mueller*, 228 Ariz. 478, 268 P.3d 1135 (App. 2011) (applying anti-deficiency statute when borrower intended to eventually occupy a partially constructed home on the property). BMO countered by noting that the Rudgears (through Wildwood) indicated in the 2009 loan renewal documents that the loan's primary purpose was real estate investment. BMO also pointed out that the Rudgears had purchased other lots for development and that the related loan documents indicated that each property would be the Rudgears' primary residence.

¶5          The superior court granted summary judgment in favor of Wildwood and the Rudgears, finding that the Rudgears intended to use the property for a single-family residence and thus qualified for anti-deficiency protection. The court of appeals reversed, holding that the anti-deficiency protection did not apply because, irrespective of the Rudgears' intent, the lot was vacant and thus was not being utilized for a dwelling. *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 234 Ariz. 100, 102 - 03 ¶ 11, 317 P.3d 641, 643 - 44 (App. 2014).

**¶6**     We granted review because the applicability of § 33-814(G)'s anti-deficiency provision is a recurring issue of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

**¶7**     We review de novo a grant of summary judgment, viewing the facts and reasonable inferences in the light most favorable to the non-prevailing party. *Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 57 ¶ 8, 280 P.3d 599, 601 (2012). We also review de novo issues of statutory interpretation. *Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 325 ¶ 11, 322 P.3d 139, 142 (2014).

**¶8**     Our legislature adopted the deed of trust framework in 1971 as an alternative to judicial foreclosures. *In re Krohn*, 203 Ariz. 205, 208 ¶ 10, 52 P.3d 774, 777 (2002). Under the deed of trust statutes, foreclosure occurs extra-judicially, through the trustee's power of sale. A.R.S. § 33-807. Once trust property is sold at a trustee's sale, the statutes limit the lender's ability to recover a deficiency judgment against the borrower. *Id.* § 33-814(G); *cf.* § 33-729 (providing anti-deficiency protection for purchase money mortgages). Our anti-deficiency laws serve to prevent artificial deficiencies resulting from forced sales and to protect borrowers from losing other assets to foreclosure. *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 703 Ariz. Adv. Rep. 32 at ¶ 13 (Dec. 31, 2014).

**¶9**     Section 33-814(G) bars deficiency judgments altogether for most residential properties. The statute provides:

> If trust property of two and one-half acres or less which is limited to and *utilized for either a single one-family or a single two-family dwelling* is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

A.R.S. § 33-814(G) (emphasis added).

**¶10** By its terms, the statute applies only to property that is "utilized for either a single one-family or a single two-family dwelling."[1] The statute does not define "dwelling," though we have recognized that the word "is susceptible to several interpretations, depending on the context of its use." *Mid Kan. Fed. Sav. & Loan Ass'n of Wichita v. Dynamic Dev. Corp.*, 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991).

**¶11** In *Mid Kansas*, we addressed whether § 33-814(G) applied to a residential developer whose encumbered trust properties had each been improved by "a substantially finished residence." *Id.* at 124, 804 P.3d at 1312. We held first that, so long as the subject property fits within the statutory definition, the mortgagor's identity is irrelevant. *Id.* at 128, 804 P.2d at 1316.

**¶12** We observed that the "principal element" in the varied definitions of "dwelling" is "the purpose or use of a building for human abode, meaning that the structure is wholly or partially occupied by persons lodging therein at night or *intended* for such use." *Id.* (emphasis in original) (internal quotation marks omitted). The structure must also be suitable for residential use. *See Smith v. Second Church of Christ, Scientist*, 87 Ariz. 400, 405, 351 P.2d 1104, 1107 (1960) ("A dwelling is, of course, a building suitable for residential purposes.").

**¶13** *Mid Kansas* then considered whether the property was "utilized for" a single one- or two-family home. 167 Ariz. at 128 - 29, 804 P.2d at 1316 - 17. We approvingly cited a court of appeals decision holding that the statute applied to an investment condominium that was used occasionally both by the owners and third-party renters. *Id.* (citing *N. Ariz. Props. v. Pinetop Props. Grp.*, 151 Ariz. 9, 12, 725 P.2d 501, 504 (App. 1986)). Thus, a property can be "utilized for" a dwelling even when the structure is not the borrower's primary residence.

---

[1] The legislature recently amended A.R.S. § 33-814 to clarify that subsection (G) does not apply to trust property that was (1) developed for commercial resale to a third party, (2) never substantially completed, or (3) never used as a dwelling. A.R.S. § 33-814(H). The amendment, however, does not apply to deeds of trust that originated on or before December 31, 2014, *id.*, and so does not guide our analysis here.

¶14    But the property in *Mid Kansas* was not "utilized for" a dwelling:

> In contrast to the *Northern Arizona Properties* case, the property in question here had never been used as a dwelling, and was in fact not yet susceptible of being used as a dwelling. There is a difference between property intended for eventual use as a dwelling and property utilized as a dwelling. We hold that commercial residential properties held by the mortgagor for construction and eventual *resale* as dwellings are not within the definition of properties "limited to" and "*utilized* for" single-family dwellings.

*Id.* at 129, 804 P.2d at 1317 (emphasis in original).

¶15    Our holding in *Mid Kansas* clarified, for purposes of the anti-deficiency statute, both what constitutes a "dwelling" and when property is "utilized for" a dwelling. A structure is a "dwelling" if it is suitable for residential purposes and a person resides in the structure, or the structure is intended for such use. *Id.* at 128, 804 P.2d at 1316. Thus, a property contains a "dwelling" for purposes of the anti-deficiency statute when a borrower has purchased but not yet occupied a home, given that the structure is suitable and intended for human abode. *See id.*

¶16    Although the intended use of a completed building is relevant in determining if it is a dwelling, an intent to eventually construct a building does not determine whether property is being "utilized for" a dwelling. We did state in *Mid Kansas* that "property is not utilized as a dwelling when it is unfinished, has never been lived in, and is being held for sale to its first occupant by an owner who has no intent to ever occupy the property." *Id.* at 129, 804 P.2d at 1317. But our noting the developer's lack of intent to occupy the property in *Mid Kansas* does not suggest that property may be "utilized for" a dwelling merely because a borrower intends to construct and occupy a home there. Indeed, *Mid Kansas* expressly observed that "[t]here is a difference between property intended for eventual use as a dwelling and property utilized as a dwelling." *Id.*

¶17    Our comments in *Mid Kansas* regarding the role of intent were somewhat imprecise and have caused some confusion. To clarify, we reaffirm the distinction noted in *Mid Kansas* between property that is

intended for eventual use as a dwelling and property utilized for a dwelling. The latter requires that a residential structure have been completed. Vacant property is not being utilized for a dwelling even if the borrower intends someday to construct and occupy a home there. This interpretation comports with both our analysis in *Mid Kansas* and the statutory text, which speaks in the present tense ("is . . . utilized for"). A.R.S. § 33-814(G).

**¶18** For purposes of § 33-814(G), a residential structure may qualify as a "dwelling" before it is occupied, *see supra* ¶ 15, but trust property is not being "utilized for" a dwelling until a residential structure is completed.

### III.

**¶19** Under these principles, the Rudgears are not entitled to § 33-814(G)'s anti-deficiency protection: the trust property remained undeveloped and a dwelling was never completed.

**¶20** This conclusion conflicts with language in *Mueller*. Relying on *Mid Kansas*'s observation that the borrower there never intended to occupy the property, the court of appeals in *Mueller* held that the anti-deficiency statute applied to trust property containing a partially completed home because the borrower intended to live in it upon its completion. *Mueller*, 228 Ariz. at 480 ¶ 9, 268 P.3d at 1137. *Mueller*'s emphasis on intent arguably would extend anti-deficiency protection to owners of a vacant lot so long as they intend to build and eventually live in a residence.

**¶21** In applying the anti-deficiency statute to an unfinished dwelling, the court in *Mueller* cited two policy concerns. First, the court reasoned that if the statute's protections turn on whether a structure is occupied, borrowers facing foreclosure would be induced to camp out in unfinished structures so they could claim to be "utilizing" the property as a dwelling. *Id.* at 480 ¶ 10, 268 P.3d at 1137. Second, it seems unfair that a borrower who lives in a completed dwelling for a day would be entitled to anti-deficiency protection while a homeowner who has yet to move in would not. *Id.*

**¶22**　　　　But neither of these concerns is warranted.  The first scenario cannot occur given our holding that there must be a completed structure on the property suitable for dwelling purposes.  And in the second scenario, even the homeowner who has not yet moved into the completed residence would be entitled to anti-deficiency protection under our interpretation of the statute.  *See supra* ¶¶ 15, 17.  We overrule *Mueller* insofar as it conflicts with our reasoning in this case.

## IV.

**¶23**　　　　We reverse the judgment of the superior court and remand the case to that court for entry of partial summary judgment in favor of BMO, vacate the opinion of the court of appeals, and award attorney fees to BMO pursuant to A.R.S. § 12-341.01.