NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

*In the Matter of the Estate of:*

DAVID GOODWIN PERKINS, Deceased.

---

PATRICIA KIMBALL and BENJAMIN KIMBALL, husband and wife;
7 BAR, LLC, an Arizona limited liability company; BANJO, LLC, an
Arizona limited liability company; and SEVILLE EAST, an Arizona
general partnership, *Appellants/Cross-Appellees,*

*v.*

MEMI PERKINS; SILKIE PERKINS; AMANDA CALVERT; DAVID ALEX
PERKINS, DULCY MOORE PERKINS; SHIRLEY A. SEITZ; SMITH
PERKINS, and DINAH PERKINS, *Appellees/Cross-Appellants.*

No. 1 CA-CV 14-0657
FILED 7-5-2016

---

Appeal from the Superior Court in Yavapai County
Nos. P1300CV20090963 and P1300PB17174
(Consolidated)
The Honorable David L. Mackey, Judge

**AFFIRMED AS MODIFIED**

---

COUNSEL

Cavanagh Law Firm, Phoenix
By Jeffrey B. Smith, William F. Begley, David A. Selden,
Justin V. Niedzialek
*Counsel for Appellants/Cross-Appellees Kimball*

Dickinson Wright, PLLC, Phoenix
By Michael R. Scheurich, Michael J. Plati

Lynn Tillotson Pinker & Cox, LLP, Dallas, TX
By David S. Coale
*Co-Counsel for Appellant/Cross-Appellee 7 Bar LLC, Banjo LLC, Seville East*

Gallagher & Kennedy, PA, Phoenix
By Mark C. Dangerfield
*Counsel for Appellees/Cross-Appellants Perkins*

Amanda Calvert, Culver City, CA
*Appellee/Cross-Appellant*

David Alex Perkins, Prescott
*Appellee/Cross-Appellant*

Dulcy Moore Perkins, Scotts, MI
*Appellee/Cross-Appellant*

Shirley A. Seitz, Cottonwood
*Appellee/Cross-Appellant*

Dinah Perkins, Clarkdale
*Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which
Presiding Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**C A T T A N I**, Judge:

¶1        7 Bar LLC, Banjo LLC (collectively, the "LLCs"), and Seville East (a general partnership closely associated with the LLCs), along with Patricia ("Patti") and Benjamin ("Ben") Kimball, appeal from the superior court's judgment imposing a constructive trust in favor of the Estate of David Goodwin Perkins (the "Estate") over certain real property owned by the LLCs.  The Estate and several heirs of the Estate cross-appeal from the judgment, contesting the scope of the constructive trust and the court's failure to award attorney's fees and certain taxable costs.  For reasons that follow, we affirm the judgment as modified to include a total taxable cost award of $15,656.30 to the Estate.

## FACTS AND PROCEDURAL BACKGROUND

¶2        This appeal addresses the disposition of several hundred acres of undeveloped real property that were originally part of David Perkins's estate.  Perkins died intestate in mid-1991, leaving 12 heirs, including Patti, Silkie Perkins, and Memi Perkins.[1]  Patti, Silkie, and one non-heir were appointed as the Estate's co-personal representatives.  The Estate has not been closed, and all three co-personal representatives remained in that position during the litigation in this case.

¶3        One of the Estate's assets when Perkins died was approximately 550 acres of undeveloped land in Chino Valley (the "Property").  The Property was subject to a deed of trust securing a $275,000 promissory note in favor of a group of creditors (the "Russo Group"); over $220,000 in principal remained outstanding at the time of Perkins's death.  When the Estate was unable to make monthly payments, the Russo Group provided notice that a trustee's sale of the Property would be held in April 1992.

¶4        With the assistance of the Estate's counsel, the heirs undertook a strategy to delay or avoid the trustee's sale (and thus save the Property for the heirs) by transferring the Property into a newly-formed

---

[1]        The heirs were Perkins's children: Dorothy Diane Halter, Patti Kimball, Shirley Seitz, David Alex Perkins, Nicholas Charles Perkins, Silkie Perkins, Austin Goodwin Perkins (now deceased, with Dinah Perkins his heir), Smith Perkins, Memi Calvert Perkins, Dulcy Perkins, Verd Benjamin Calvert, and Amanda R. Calvert.  Memi, Amanda, Dinah, David, Dulcy, Shirley, and Silkie (individually and on behalf of the Estate) are the appellees/cross-appellants in this case.

corporation owned by the heirs—East Chino Development Company—then causing the corporation to immediately file for bankruptcy. East Chino was formed (albeit without any accompanying corporate formalities), and the Estate conveyed the Property to the company at the end of March 1992, apparently without receiving any payment or other consideration for the transfer. East Chino then filed for bankruptcy on April 1, 1992, and the automatic stay delayed the scheduled trustee's sale.

¶5             In early 1993, while the stay remained in effect, Patti came up with a plan to keep the Property with the help of family friend Harry Robertson. Robertson would arrange to purchase the Property from the Russo Group immediately following the trustee's sale, then grant the Perkins family a non-assignable, two-year option to recover the Property at cost. The Russo Group accepted Robertson's offer to purchase the Property for $265,000 immediately following the trustee's sale.

¶6             Robertson then drafted a real estate option agreement (the "Option Agreement") giving Patti a two-year right to acquire the Property by paying Robertson's purchase costs plus interest, in addition to repaying a prior $10,000 loan (which had been used to hire East Chino's bankruptcy attorney). The Option Agreement referred to Patti as "a married woman dealing with her sole and separate property," but the acknowledged purpose of the Option was to protect the Perkins family. Robertson clarified that the Option was in Patti's name to avoid "hassling back and forth among the kids," and because Patti was "the executor of the estate." After Patti received the Option Agreement, she on multiple occasions reassured the other heirs that she was "acting on your behalf" and that she was representing the heirs.

¶7             In late 1995, Patti arranged a double escrow conveyance through which she would exercise the Option and concurrently sell the Property to Northland Development. Northland's down payment would pay for Patti to exercise the Option, cover closing costs in both transactions, and leave Patti with over $20,000 cash. Northland received 130 acres at the time of the down payment, and financed the balance of the transaction with an approximately $774,000 promissory note secured by a deed of trust on the remaining 400 acres.

¶8             Northland failed to make any payments on the note and, in April 1996, returned the 400 acres to Patti (plus additional acreage that Patti purchased) by deed in lieu of foreclosure. At that point, Patti held approximately 440 acres of the Property free and clear of encumbrances. Patti then immediately sold a portion of the Property for over $122,000 cash,

leaving approximately 402 acres of the Property remaining at the time of trial in this case.

¶9 In March 1997, Patti and Ben Kimball borrowed $400,000 (the "Slabine Loan") secured by a deed of trust on the remainder of the Property, and failed to make payments less than a year later. The creditor initiated foreclosure proceedings, and the Kimballs sought help from John Tucker, an experienced real estate investor and Ben's long-time friend.

¶10 Tucker and the Kimballs then entered into a joint venture agreement in which they agreed to form an LLC funded by Tucker's contribution of $500,000 (to pay off the Slabine Loan) and the Kimballs' contribution of the Property. Although the agreement contemplated that the LLC would be created promptly, Tucker and the Kimballs operated as joint venturers for two years until the creation of 7 Bar in mid-2000.

¶11 During those two years, Tucker paid over $55,000 to reinstate the Slabine Loan (avoiding foreclosure) and over $400,000 to pay off the balance of the Slabine Loan. Tucker recorded a deed of trust against the Property two weeks after paying the Slabine Loan in full. Tucker also arranged payment of $80,000 to Northland to settle its pending lawsuit against Patti (for non-payment for the extra 30 acres), and thus secure the release of a lis pendens encumbering the Property.

¶12 In June 2000, Tucker and the Kimballs formed 7 Bar LLC, with Patti and Ben each owning a 25% interest and Chinoco LLC (owned by Tucker and his brothers, and managed entirely by Tucker) owning 50%. The articles of organization of 7 Bar designated Chinoco as the manager with "the exclusive right to control and manage" the company. The Kimballs then conveyed the Property to 7 Bar in November 2000 as "a deed of gift." And in 2001, Tucker released his deed of trust encumbering the Property.

¶13 Between 2001 and 2007, 7 Bar conveyed several lots to related individuals (Patti, Ben, Tucker, Tucker's wife, and Tucker's brothers) to divide into smaller parcels. These lots were later conveyed into Banjo LLC, which was also owned 50% by Tucker and his brothers and 25% each by Patti and Ben, equivalent to their respective interests in 7 Bar.

¶14 Through 2008, Tucker gave the Kimballs substantial amounts of money (totaling approximately $1,400,000) to defer selling the Property. Tucker's stated desire was to hold the Property so it would appreciate in value, something that could be accomplished with minimal expense (less than $1,000 per year) in property taxes and liability insurance.

Nevertheless, Tucker spent, through his various entities, around $426,000 in projects related to the Property, although only approximately $70,000 benefitted the property.

**¶15** In late 2007, Memi noticed a "7 Bar" sign on the Property, which led to this litigation after Patti told Memi in March 2008 that she was not holding the Property on behalf of the Estate or the heirs. Memi's petition sought, among other relief, removal of Patti as personal representative and a constructive trust on the Property for the benefit of the Estate and an order quieting title in the Estate. The court consolidated a quiet title action brought by the Kimballs and the LLCs into the probate case, and joined other heirs as parties.

**¶16** As relevant here, the superior court granted partial summary judgment against the LLCs, ruling that 7 Bar was not a bona fide purchaser for value. After a nine-day bench trial, the court found that Patti had breached her fiduciary duty as personal representative of the Estate and granted a constructive trust in favor of the Estate over an undivided one-half interest in the Property. Although the court denied the LLCs' requests for equitable subrogation or an equitable lien, the court determined that the LLCs should retain the undivided one-half interest not reached by the constructive trust. The court initially granted Memi an award of attorney's fees, but later reversed that decision.

**¶17** After the superior court entered judgment, the parties timely appealed and cross-appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1).[2]

## DISCUSSION

**¶18** The claims of error presented on appeal and on cross-appeal relate to the superior court's grant of partial summary judgment and its ruling following a bench trial. We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365, ¶ 7 (2015). After a bench trial, we review the court's legal conclusions de novo, but defer to its findings of fact unless clearly erroneous. *Town of Marana v. Pima Cnty.*, 230 Ariz. 142, 152, ¶ 46 (App. 2012). We consider the evidence presented at trial in the light most favorable to upholding the

---

2 Absent material revisions after the relevant date, we cite a statute's current version.

court's ruling. *Id.* Additional standards of review are presented, as applicable, in context below.

# I. Asserted Procedural Bars.

## A. Limitations Period.

¶19 The LLCs first contend that they are protected by the five-year statute of repose in A.R.S. § 14-1106. As relevant here, that statute allows any person injured by "fraud" in connection with probate proceedings to obtain relief from the perpetrator or restitution from the beneficiaries of the fraud, but provides that "no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of commission of the fraud." In the LLCs' view, Patti's fraud occurred at the latest when she exercised the Option in 1995 (taking the Property in her individual capacity instead of on behalf of the Estate), and Memi's 2008 lawsuit is thus time-barred.

¶20 But § 14-1106 applies to claims of fraud, and the claim for constructive trust in this case was based not on any fraudulent acts, but rather on Patti's fiduciary duty to hold the Property in trust for the Estate (and her breach of that duty). The LLCs contend that a breach of fiduciary duty necessarily constitutes constructive fraud. Although related, the two are distinct: constructive fraud requires a breach of fiduciary duty, but it further requires the additional element of justifiable, detrimental reliance. *Dawson v. Withycombe*, 216 Ariz. 84, 107–08, ¶ 72 (App. 2007); *see also Lerner v. DMB Realty, LLC*, 234 Ariz. 397, 402, ¶ 12 (App. 2014) (enumerating the elements of common law fraud). Because the basis for constructive trust was not a claim of fraud, § 14-1106 does not apply to preclude the claims against the LLCs.

## B. Laches.

¶21 Both the Kimballs and the LLCs contend that the superior court erred by concluding that Memi's claim was not barred by laches. We review the court's ruling on laches for an abuse of discretion. *McLaughlin v. Bennett*, 225 Ariz. 351, 353, ¶ 5 (2010).

¶22 Laches—the "equitable counterpart to the statute of limitations"—operates to bar a claim if one party's unreasonable delay in filing suit results in prejudice to the other party. *Sotomayor v. Burns*, 199 Ariz. 81, 83, ¶ 6 (2000); *French v. French*, 125 Ariz. 12, 15 (App. 1980) (addressing laches in the context of a constructive trust claim). Delay alone is not sufficient; instead, the delay must be unreasonable under the

circumstances, including whether or when the party gained knowledge of the basis for its claim. *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 558, ¶ 6 (2009); *see also Flynn v. Rogers*, 172 Ariz. 62, 66 (1992).

¶23　　　　The Kimballs argue that, contrary to the superior court's findings, Patti unequivocally repudiated her role as fiduciary as regards the Property at least by 1995, thus giving the Estate and the heirs knowledge of the claim. They argue that Memi's failure to file her petition until over a decade later constitutes laches as a matter of law. But the evidence regarding whether the Estate and heirs knew Patti claimed the Property as her own was disputed at trial, and the court reasonably found Patti did not clearly repudiate her fiduciary duty so as to give the heirs notice of their claim.

¶24　　　　Although Patti testified that she had told Memi, Silkie, and other heirs on multiple occasions that she was keeping the Property for herself, the other heirs contradicted Patti's testimony, stating that at each meeting Patti reassured them that she continued to act on their behalf. Memi testified that it was not until March 2008 that Patti clearly stated she was not holding the Property on behalf of the Estate or the heirs. The court weighed both accounts and found the heirs' version to be more credible, and we defer to the court's credibility assessments and weighing of conflicting evidence. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

¶25　　　　The Kimballs also presented a handful of letters sent in late 1995 from Silkie's attorney to Patti and her counsel suggesting some dispute about whether Patti would divide the proceeds from exercising the Option and selling the Property to Northland. Although the letters provide some evidence regarding Silkie's understanding of Patti's position, they do not show that any other heir doubted or had reason to doubt Patti's intentions. Nor do they reflect if or how the dispute was resolved, particularly in light of Northland's immediate default, leaving little to no cash proceeds from the transaction. Accordingly, the superior court did not abuse its discretion by crediting the heirs' belief that Patti held the Property for the Estate despite the 1995 attorney letters.

¶26　　　　The LLCs contend that Tucker's substantial expenditures on the Property show prejudice stemming from the delay. But prejudice alone is not enough; laches also requires that the delay in bringing suit be unreasonable. *See Martin*, 219 Ariz. at 558, ¶ 6. As discussed above, the superior court found that the heirs did not know or have reason to know that Patti was not holding the Property for their benefit until 2008. The

LLCs' argument that laches should nevertheless apply because only Patti (not the LLCs) was a fiduciary of the Estate misses the mark. Patti's role is squarely relevant to the heirs' knowledge of the existence of a claim; there would be no claim if Patti continued to act for their benefit, but a potential claim if she was not doing so. Based on the superior court's findings that the heirs did not know or have reason to know Patti was no longer acting as the Estate's fiduciary until 2008, the court did not abuse its discretion by concluding that the delay in filing the petition was not unreasonable.

## C. Standing.

¶27 The LLCs argue that Memi—who was not a personal representative of the Estate and in fact filed her petition as an individual heir—lacked standing to assert claims on behalf of the Estate. The superior court concluded Memi had standing based on A.R.S. § 14-3709(B)–(D), which allows a "person interested in the estate" to bring to the court's attention any issue of allegedly concealed estate assets. The LLCs contend that this statute provides a non-personal representative only a limited right of discovery, and any remedy remains in the hands of the personal representative. *See* A.R.S. § 14-3709(D).

¶28 Notwithstanding any limitations on the scope of an interested party's role under § 14-3709, other provisions provide a basis for Memi's standing and the court's authority to craft the constructive trust remedy. Under A.R.S. § 14-3712, a personal representative is liable to "interested persons" for breach of her fiduciary duty "to the same extent as a trustee of an express trust." The trust statutes authorize multiple potential remedies for breach of trust, including compelling the trustee to restore the property, suspending or removing the trustee, voiding a trustee's acts, and imposing a constructive trust on trust property (including tracing and recovering trust property wrongfully transferred). A.R.S. § 14-11001(B)(3), (6)–(7), (9). Although the parties did not address these provisions in their appellate briefs, we are not limited to the arguments of counsel when construing a statutory scheme. *Lyons v. State Bd. of Equalization*, 209 Ariz. 497, 502 n.2, ¶ 19 (App. 2005).

¶29 Among other things, Memi's petition sought to void transfers of the Property, remove Patti as personal representative, and impose a constructive trust to return the Property. As an heir and thus an "interested person," Memi was authorized under §§ 14-3712 and -11001 to assert these claims against Patti as personal representative. The LLCs (along with the Kimballs) then pressed a counterclaim to quiet title to the property and filed a separate complaint to quiet title, which was later consolidated with the

probate case. *See Gonzalez v. Superior Court*, 117 Ariz. 64, 66 (1977) (noting that probate jurisdiction extends to quiet title actions affecting estates). This consolidation of claims brought the full scope of the dispute before the superior court. Although the court could have first addressed removal and replacement of Patti as personal representative, given that the basis for removal also related to the quiet title issue, the court reasonably considered the issues in a single proceeding. Accordingly, Memi had standing to assert her claims, and the superior court had authority to apply the constructive trust remedy to quiet title to the Property.

## II.    Constructive Trust.

**¶30**        The Kimballs and the LLCs contend the superior court erred by imposing a constructive trust in favor of the Estate over part of the Property. Memi argues the court erred by imposing the constructive trust over only an undivided one-half interest in the Property as opposed to 100% of the Property. We review de novo decisions regarding the availability of an equitable remedy like a constructive trust, but review for an abuse of discretion the remedy crafted by the superior court. *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 409, ¶ 106 (App. 2012). We defer to the court's conclusion that clear and convincing evidence supports imposition of a constructive trust unless no reasonable person could find the evidence sufficient. *Id.* at ¶ 108.

**¶31**        A constructive trust is a flexible equitable remedy used to return property obtained through unconscionable conduct—including breach of fiduciary duty—to its rightful owner. *Id.* at ¶ 107; *Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 130, ¶ 23 (App. 2012) (as amended); *see also Pioneer Annuity Life Ins. Co. v. Nat'l Equity Life Ins. Co.*, 159 Ariz. 148, 153 (App. 1988). A constructive trust is appropriately imposed if allowing a legal title holder to retain the property would result in unjust enrichment. *Cal X-Tra*, 229 Ariz. at 409, ¶ 107; *Murphy Farrell*, 229 Ariz. at 130, ¶ 23. Such a trust arises by operation of law "to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." *Cal X-Tra*, 229 Ariz. at 409, ¶ 107 (citation omitted).

**¶32**        A constructive trust is not restricted to a specific formula, and instead may be shaped by and tailored to the particular circumstances presented. *Cal X-Tra*, 229 Ariz. at 409, ¶¶ 107–08; *Murphy Farrell*, 229 Ariz. at 130, ¶ 23 (citing *Turley v. Ethington*, 213 Ariz. 640, 643, ¶ 9 (App. 2006)). The plaintiff must, however, retain at least an equitable interest in the property at issue in order to show an entitlement to receive the property wrongfully held by the defendant. *Murphy Farrell*, 229 Ariz. at 131, ¶ 23.

### A. Propriety of Imposing Constructive Trust.

¶33 Here, the superior court concluded that Patti breached her fiduciary duty by receiving and exercising the Option Agreement in her individual capacity rather than doing so for the benefit of the Estate, and that the Estate and heirs were thus entitled to an interest in the Property, to be conveyed by constructive trust. The Kimballs counter that, because the Property had already been conveyed out of the Estate, Patti could not have breached her fiduciary duty as personal representative by taking the Property for herself. The LLCs similarly contend that the prior conveyance to East Chino and the trustee's sale to the Russo Group extinguished any interest the Estate once held in the Property, rendering the constructive trust inappropriate.

¶34 In isolation, either of these conveyances might defeat a claim for constructive trust because they removed the Property from the Estate, and the personal representative's power and obligation runs only to "property of the estate." *See* A.R.S. § 14-3711; *cf.* A.R.S. § 14-3713 (noting that even personal representative's self-dealing transaction is not voidable if interested party consented or if decedent's contract authorized). In context, however, the superior court properly viewed these two conveyances as a part of a plan to preserve the Property for the Estate.

¶35 Patti, acting as personal representative, crafted a design to recover the Property from the Russo Group through Robertson's intervention, and the Russo Group formally accepted Robertson's offer to purchase the Property just days after the trustee's sale. In context, the trustee's sale was a critical step in the effort to return the Property to the Estate.

¶36 Robertson's purchase of the property was premised on his intent to help the Perkins heirs by allowing them an option to recover the Property. Although the Option Agreement references Patti as "a married woman dealing with her sole and separate property," evidence from Robertson and the other heirs supports the court's conclusion that the Option was not directed to Patti personally, but rather to her in her fiduciary capacity as personal representative of the Estate. Although the Kimballs claim the Option is clearly and unambiguously directed to her alone, the language of the agreement does not specify whether it is directed to her in her individual or representative capacity. Thus the court did not err by considering extrinsic evidence to discern the parties' intended meaning. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154

(1993). And although Patti disputed the extrinsic evidence, the superior court found her position not to be credible.[3]

¶37        The LLCs argue that Memi's claim must fail because it is based on oral promises by Patti in contravention of the statute of frauds. Arizona's statute of frauds prohibits an action on an agreement for the sale of real property unless based on an agreement "in writing and signed by the party to be charged." A.R.S. § 44-101(6). "But the statute of frauds does not bar constructive trusts, even in real property interests." *Turley*, 213 Ariz. at 643, ¶ 8. Moreover, Patti's "promises" were not agreements for the sale of real property, but rather restatements of her pre-existing obligations as personal representative of the Estate.

¶38        In the context of this multifaceted scheme designed by Patti, in her role as personal representative, to preserve the Property for the Estate, she was required to exercise the Option in her capacity as personal representative for the benefit of the Estate. Accordingly, despite the prior conveyances, the court did not err by concluding that Patti breached her fiduciary duty by exercising the Option in her own name and refusing to hold the Property for the benefit of the Estate.

###        B.        Bona Fide Purchaser Protection.

¶39        The LLCs assert that the superior court erred by ruling at summary judgment that 7 Bar was not a bona fide purchaser for value.[4] The LLCs argue that 7 Bar paid valuable consideration for the Property and did so without knowledge of the Estate's claim, and thus was entitled to protection as a bona fide purchaser.

¶40        Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of

---

[3]        The LLCs further assert that quitclaim deeds from three of the heirs in 2008 and 2009 undermined the relief Memi sought. But each of these quitclaim deeds purported to convey the respective heirs' interests in the Property to Patti and to the LLCs (entities in which Patti held a substantial interest) while Patti remained personal representative of the Estate. As such, the court had authority under A.R.S. § 14-3713 to void the conveyances due to Patti's conflict of interest.

[4]        Banjo asserted at trial that it should receive bona fide purchaser protection, but the superior court concluded otherwise, and the LLCs do not challenge that ruling on appeal.

law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We review the grant of summary judgment de novo, and will affirm summary judgment if it is correct on any basis supported by the record, even if not relied upon by the superior court. *See Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012); *Mutschler v. City of Phx.*, 212 Ariz. 160, 162, ¶ 8 (App. 2006).

**¶41** Arizona law provides bona fide purchasers protection against prior unrecorded interests in land. Under A.R.S. § 33-412, unrecorded interests in land are void as to "subsequent purchasers for valuable consideration without notice"; subsequent purchasers with notice of the unrecorded interest, however, take the property subject to the prior interest.

**¶42** For these purposes, notice to an agent (and the agent's relevant knowledge) is imputed to the principal. *See In re Milliman's Estate*, 101 Ariz. 54, 65 (1966); *see also* Restatement (Second) of Agency § 272 (1958) ("[T]he liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information."). In the case of a manager-managed LLC, the manager acts as agent for the company; a member is not the company's agent simply by virtue of membership. A.R.S. § 29-654(B)(1)–(2). In the case of a joint venture, each party is an agent of the other parties (as well as a principal of the others). *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 540 (1982).

**¶43** The LLCs argue that the superior court erred in imputing Patti's knowledge of the Estate's interest in the Property to 7 Bar because, under the articles of organization, Patti was only a member, not a manager of 7 Bar. *See* A.R.S. § 29-654(B)(1). 7 Bar's articles of organization specified Chinoco as its manager; thus Tucker, as manager of Chinoco, acted in effect as 7 Bar's manager as well. The articles listed Patti only as a member.

**¶44** But 7 Bar developed out of a prior joint venture between Tucker and the Kimballs. In mid-1998, they agreed to create an LLC funded by Tucker's $500,000 contribution and the Kimballs' contribution of the Property. For the next two years until the creation of 7 Bar in mid-2000, Patti, Ben, and Tucker operated as joint venturers. As such, Patti's knowledge relevant to the Property (a subject of the joint venture), including the Estate's interest, was imputed to Tucker as a co-joint venturer. *See Sparks*, 132 Ariz. at 540. After 7 Bar was formed with Tucker (through Chinoco) as manager, Tucker's knowledge (imputed from Patti) was imputed to 7 Bar. *See* A.R.S. § 29-654(B)(2); *In re Milliman's Estate*, 101 Ariz.

at 65. Accordingly, the superior court did not err by ruling that 7 Bar was not a bona fide purchaser based on imputed knowledge.[5]

### C.      Scope of Constructive Trust.

#### 1.      Equitable Subrogation.

¶45      The LLCs argue that, because Tucker paid off the $400,000 Slabine Loan encumbering the Property, the superior court erred by denying 7 Bar's request for a lien equitably subrogated to the Slabine Loan. We review de novo the court's assessment of whether equitable relief is available and appropriate. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). We defer, however, to the court's factual findings and its balancing of the equities involved. *See Cal X-Tra*, 229 Ariz. at 409, ¶¶ 106, 108.

¶46      Equitable subrogation serves to prevent unjust enrichment by allowing a party who pays off an encumbrance to be substituted in place of the creditor, so that the payor succeeds to the rights and priority of the creditor. *Sourcecorp, Inc. v. Norcutt*, 229 Ariz. 270, 272, ¶ 5 (2012) (as amended). More specifically, "[o]ne who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment." *Id.* at 275, ¶ 26 (quoting Restatement (Third) of Property: Mortgages § 7.6(a) (1997)). The subrogee acquires the same position as if the superior lien had been expressly assigned. *Weitz Co. L.L.C. v. Heth*, 235 Ariz. 405, 410, ¶ 15 (2014). The court may appropriately consider any inequities that would result when determining whether or to what extent equitable subrogation is required to prevent unjust enrichment to other parties. *See id.* at 411, ¶ 21. The availability of equitable subrogation depends on the specific facts and circumstances presented. *Sourcecorp*, 229 Ariz. at 272, ¶ 7.

¶47      Here, Tucker prevented a pending trustee's sale by bringing the Slabine Loan current and then paying off the Loan in its entirety in mid-to late 1998. Weeks after doing so, Tucker recorded a $500,000 deed of trust against the Property (which, absent any other lienholder, held equivalent

---

5        We further note that, after trial, the superior court found that, despite the language of 7 Bar's articles of organization, Patti in fact acted as an agent for the LLC regarding, among other things, replatting and recording CC&Rs for the Property. That finding supports imputation of Patti's knowledge of the Estate's interest in the Property directly from Patti to 7 Bar.

priority as the Slabine encumbrance had before), but later voluntarily released the deed of trust in 2001.

**¶48**         Whether Tucker (or 7 Bar) is subrogated to the priority of the Slabine encumbrance is not dispositive in this case because the Estate already held a superior, preceding interest.   When Patti exercised the Option and acquired title to the Property, by operation of law she did so for the benefit of and as trustee of the Estate.   At that time, and particularly after Northland's default and deed in lieu of foreclosure, the Estate's interest reached the entire, unencumbered Property.   Slabine's subsequently acquired interest to which 7 Bar wishes to be subrogated is thus junior to that of the Estate.   As such, the Estate is not unjustly enriched by simply retaining the interest it held from the beginning.   And as equitable subrogation is designed to prevent unjust enrichment, *see Sourcecorp*, 229 Ariz. at 275, ¶ 26 (citation omitted), the court reasonably denied it under these circumstances.

### 2.         Award of Undivided One-Half Interest.

**¶49**         Memi argues the superior court erred by granting the Estate a constructive trust in only an undivided one-half interest in the Property rather than over the entire Property.  We review the scope of the equitable remedy crafted by the superior court for an abuse of discretion. *See Cal X-Tra*, 229 Ariz. at 409, ¶ 106.

**¶50**         Memi asserts that Patti was holding the Property in constructive trust for the Estate from at least 1996 (after the Northland deed in lieu of foreclosure), so the LLCs' subsequent actions had no legal or equitable basis to alter the Estate's interest. Memi relies on authority that a constructive trust declares "the rights and interests at the time of the questioned transaction, and it reverts back to the time of the transaction which gave rise to the constructive trust." *King v. Uhlmann*, 103 Ariz. 136, 149 (1968); *Pioneer Annuity*, 159 Ariz. at 154.

**¶51**         But the time at which a constructive trust is deemed to exist does not necessarily dictate the scope of the trust in light of all equitable considerations.  As an equitable remedy, a constructive trust is tailored to the particular circumstances presented. *Cal X-Tra*, 229 Ariz. at 409, ¶¶ 107–08. "The equity of the transaction must shape the measure of relief." *Markel v. Phx. Title & Tr. Co.*, 100 Ariz. 53, 58 (1966) (citation omitted).

**¶52**         Here, the superior court appropriately addressed the equities to tailor the remedy ordered.  The court considered how the significant passage of time (although insufficient to establish laches) nevertheless

affected the LLCs' position. It expressly found that Tucker (manager of 7 Bar through his role as manager of Chinoco) did not have actual knowledge of the Estate's claim to the Property. And in light of that lack of knowledge, the court noted Tucker's substantial expenditures that, absent some retained interest in the Property, would be wholly lost—and at least $70,000 of which directly benefitted the Property. Under the circumstances, the superior court did not abuse its discretion in shaping the scope to the Estate's remedy in consideration of the broader equities presented.

## III. Patti's Share as Heir.

**¶53** Memi argues that the superior court erred by allowing Patti to retain her one-twelfth heir's interest in the Estate's share of the Property. In Memi's view, this omission allows Patti to unjustly retain a significant benefit despite her breach of fiduciary duty.

**¶54** The superior court reasoned that Patti took extraordinary actions to retain the Property—without which, the Property would be "long gone"—and that, despite her other misconduct, Patti should therefore retain her interest as an heir. Memi minimizes Patti's role, describing it as simply part of Patti's duty as personal representative to "take all steps reasonably necessary for the management, protection and preservation of, the estate." A.R.S. § 14-3709(A).

**¶55** But the superior court could reasonably conclude that Patti's early actions on behalf of the Estate went beyond the duties of a personal representative. By securing Robertson's participation, Patti crafted a scheme through which she successfully recovered the Property despite the trustee's sale to Russo Group. Although Patti later converted the Property to her own purposes, the Property would have been lost after the initial trustee's sale absent her efforts. The court could properly have determined that Patti had already received excess benefit from the Property. But the court did not abuse its substantial discretion by considering Patti's early actions that secured the availability of the Property for the Estate to recover.[6] *See Loiselle v. Cosas Mgmt. Group, LLC*, 224 Ariz. 207, 210, ¶ 8 (App. 2010) ("Fashioning an equitable remedy is within the trial court's discretion, and it will not be disturbed on appeal absent an abuse thereof.").

---

[6] The ruling also left in place Patti's 25% membership interest (and Ben's 25% interest) in each of the LLCs. Any claims to those interests as between Tucker and the Kimballs are beyond the scope of this litigation.

## IV.    Fees and Costs in Superior Court.

### A.    Denial of Memi's Attorney's Fees.

¶56            Memi argues the superior court erred by denying her request for an award of attorney's fees under A.R.S. § 12-1103(B) (quiet title) and A.R.S. § 14-3709(D) (probate).[7]  We generally review the court's denial of a discretionary award of attorney's fees for an abuse of that discretion, although we review de novo the applicability of a particular attorney's fees statute.  *See Vicari v. Lake Havasu City*, 222 Ariz. 218, 224, ¶ 23 (App. 2009); *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 164 Ariz. 211, 215 (App. 1990).

### 1.    Fees Under § 12-1103(B).

¶57            A.R.S. § 12-1103(B) authorizes a discretionary award of attorney's fees in a quiet title action against a person who wrongfully refuses to execute a quitclaim deed presented 20 days prior to the action.  Here, the court reasoned that § 12-1103(B) did not support an award of fees under the circumstances both because the court imposed a constructive trust on an undivided percentage of the Property (not a discrete portion that could have been quitclaimed) and because neither side was the prevailing party.

¶58            Memi asserts that the court erred because, under *Jones v. Burk*, the fact that she requested the LLCs quitclaim more of the Property than she eventually recovered is not dispositive; instead, she claims that the LLCs should have quitclaimed "the lesser amount, the amount to which the other party is entitled."  164 Ariz. 595, 597–98 (App. 1990).  But because the court did not abuse its discretion by determining neither party had prevailed for these purposes, we need not address whether — in the context of a quiet title action based on the equitable remedy of constructive trust — *Jones* would require the LLCs to divine the court's eventual balancing of the equities and quitclaim an undivided one-half interest in the Property.

¶59            Although Memi asserts that, having recovered half of the Property, she was necessarily the successful party, neither party obtained the full measure of relief it sought.  Both sides claimed a right to the entire Property, and the court awarded each side half.  Although failure to recover the full measure of relief requested does not necessarily preclude a finding

---

[7]            Memi also sought fees under the common fund doctrine.  The court denied that request without prejudice to asserting that claim as an administrative expense of the Estate, and Memi does not challenge that ruling.

of success, *see Ocean W. Contractors, Inc. v. Halec Const. Co.*, 123 Ariz. 470, 473 (1979), the court retains discretion to measure the relative success of the opposing parties. *See Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 13–14, ¶¶ 21–22 (App. 2011). Accordingly, the court did not err by declining to award Memi her attorney's fees under § 12-1103(B). *See Clark*, 164 Ariz. at 215.

### 2.     Fees Under § 14-3709(D).

**¶60**          Memi next argues the superior court erred by denying her request for attorney's fees under A.R.S. § 14-3709. This court has noted that the statute creates:

> a process whereby a personal representative may commence an "action to recover possession of property," authorized by subsection (A). Before the trial on that action, subsection (D) authorizes a process by which the personal representative may obtain an order of disclosure against an individual believed to have wrongfully "concealed, embezzled, conveyed or disposed of" property. § 14–3709(D). That order, if obtained, may be used in the subsection (A) trial to recover the property. At trial, the personal representative may obtain a judgment for double the value of the property in the event it succeeds on the action to recover, including proof of the wrongful conduct which formed the basis of the order of disclosure.

*In re Estate of Newman*, 219 Ariz. 260, 266–67, ¶ 19 (App. 2008) (as amended). Subsection (D), in addition to authorizing an order of disclosure and double damages in the following action to recover possession, permits the court to award reasonable attorney's fees. A.R.S. § 14-3709(D).[8]

---

[8]          In its entirety, § 14-3709(D) provides:

If on examination or from other evidence adduced at the hearing it appears that a person has concealed, embezzled, conveyed or disposed of any property of a decedent, or possesses or has knowledge of deeds, bonds, contracts or other writings tending to disclose the right, interest or claim of a decedent to any property, or the will of a decedent, the court may order that person to turn over the documents or disclose knowledge to the personal representative and may commit the person cited to jail until the order is complied with

¶61        This court has held that Subsection (D) only authorizes an award of double damages after issuance of an order of disclosure, *Estate of Newman*, 219 Ariz. at 269, ¶ 26, and the superior court here reasoned that an award of fees under Subsection (D) should similarly be conditioned on prior issuance of an order of disclosure.  Memi argues that the statute contains no such restriction.

¶62        We need not decide whether an order of disclosure is a necessary prerequisite to an award of attorney's fees under § 14-3709(D), however, because at the very least that statute's authorization of a fee award applies only to a proceeding under that statute.  Here, although Memi's petition requested a § 14-3709 proceeding, the court did not engage in the § 14-3709 process and did not rule based on that procedure.  Accordingly, the court did not err by concluding that an award of fees under § 14-3709 was not appropriate in this case.

### B.        Denial of Mediation Fees as Taxable Costs.

¶63        Memi argues the superior court erred by excluding $4,058.75 in mediation fees from the award of taxable costs.  When the LLCs objected to including mediation fees as taxable costs, Memi "acknowledge[d] that the $4,058.75 in mediation fees would also more correctly be classified as a component of her compensable legal fees."  The court's calculation of taxable costs thus excluded mediation fees based on the agreement of the parties.

¶64        On appeal, Memi relies on *Reyes v. Frank's Service & Trucking, LLC*—which was decided several months after the superior court rendered judgment in this case—for the proposition that mediation fees may constitute taxable costs if "the parties agreed to incur the costs."  235 Ariz. 605, 612, ¶ 29 (App. 2014); *see also* A.R.S. § 12-332(A)(6) (stating that taxable

---

or the person is discharged according to law.  The examination shall be reduced to writing and filed in court.  The order for the disclosure made on this examination is prima facie evidence of the right of the personal representative to the property in an action brought for recovery of that property, and a judgment shall be for double the value of the property, or for return of the property and damages in addition to the property equal to the value of the property.  The court may also award reasonable attorney fees and costs.

costs include "[o]ther disbursements that are made or incurred pursuant to an order or agreement of the parties"). Neither the LLCs nor the Kimballs respond to this argument, conceding the point.

**¶65** Because mediation fees may be taxed as disbursements pursuant to an agreement of the parties, A.R.S. § 12-332(A)(6), and absent any dispute that the parties voluntarily agreed to private mediation, Memi was entitled to recoup the $4,058.75 in mediation fees as taxable costs, and we modify the judgment accordingly to reflect a total cost award of $15,656.30.

## V.     Attorney's Fees and Costs on Appeal.

**¶66** The LLCs request an award of attorney's fees and costs on appeal under A.R.S. § 12-1103. Memi seeks an award of attorney's fees and costs on appeal under A.R.S. §§ 12-1103 and 14-3709(D); in the alternative, Memi and Silkie seek an award of fees from the Estate under the common fund doctrine and A.R.S. § 14-3720, respectively. As described above, § 14-3709 is inapplicable. In an exercise of our discretion, we decline to award either side fees under § 12-1103. We grant Memi and Silkie's request to recover fees from the Estate, subject to compliance with ARCAP 21. As the overall prevailing party, Memi is entitled to her costs on appeal under A.R.S. § 12-342 upon compliance with ARCAP 21.

## CONCLUSION

**¶67** The judgment is affirmed as modified to include a total taxable cost award of $15,656.30.



Ruth A. Willingham · Clerk of the Court
FILED: AA

20